1

**TYCKO & ZAVAREEI LLP**
Sabita J. Soneji (California Bar No. 224262)
483 Ninth Street, Suite 200
Oakland, CA 94607
Telephone: (510) 254-6808
Facsimile: (510) 210-0571
Email: ssoneji@tzlegal.com

2

3

4

5

**TYCKO & ZAVAREEI LLP**
Anna C. Haac (*pro hac vice* forthcoming)
1828 L Street, NW- Suite 1000
Washington, D.C 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
Email: ahaac@tzlegal.com

6

7

8

9

**BURKE LAW OFFICES, LLC**
Alexander H. Burke (*pro hac vice* forthcoming)
155 N. Michigan Ave., Suite 9020
Chicago, IL 60651
Telephone: (312) 729-5288
Email: aburke@burkelawllc.com

10

11

12

13

*Attorneys for Plaintiff and the Putative Class*

14

15

16

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

17

| | |
|---|---|
| BRYAN CANARY, individually and on behalf of all others similarly situated,<br><br>                                 Plaintiffs,<br><br>        v.<br><br>YOUNGEVITY INTERNATIONAL, INC.<br><br>                                 Defendant. | **Case No. 5:18-cv-03261**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO 47 U.S.C. § 227 *ET SEQ.* (TELEPHONE CONSUMER PROTECTION ACT)**<br><br>(JURY TRIAL DEMANDED)<br><br>**CLASS ACTION COMPLAINT** |

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Bryan Canary, through his undersigned attorneys, individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and information and belief as follows:

## NATURE OF ACTION

1.      This case involves a scheme by Youngevity International, Inc. ("Youngevity") to market certain products and services via unsolicited phone calls using autodialer technology and prerecorded messages, otherwise known as robocalling—in plain violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (hereinafter referred to as the "TCPA").

2.      As described more fully below, Youngevity is a "network marketing business" that uses illegal prerecorded telemarketing calls to sell certain products and services, including small business services. Plaintiff received one such robocall on behalf of a Youngevity division the company refers to as David Allen Capital, Inc. ("DAC"), through which Youngevity markets small business loans.

3.      Youngevity directs, conducts, and controls certain of its telemarketing through its employees and/or various sales agents, including those marketing on behalf of Youngevity's DAC arm. For example, Youngevity's advertising policy expressly requires "distributors," including sales agents offering small business loans through DAC, to get all advertisement approved by Youngevity, including text messages, phone scripts, and other "recorded information."

4.      Youngevity, through DAC, further directs its services sales agents to websites that make available 1-800 numbers with prerecorded messaging tools and encourages them to cold call potential customers for purposes of calling prospective customers to market Youngevity services, including DAC, as well as Youngevity's Telecare and merchant processing services. Youngevity and its agents refer to its preferred method of recruiting customers as "bird dogging," a practice aimed at obtaining the greatest number of leads with minimal personal contact.

5.      Upon information and belief, Youngevity also benefits from and ratifies the telemarketing calls of its employees and/or various sales agents through commissions Youngevity receives for every sale. For example, when a small business owner is approved, accepts, and

receives a loan from a DAC lending source, the lending source pays a commission for this lead to DAC, which upon information and belief, at least a portion of which is then passed on to Youngevity. Youngevity also pays its sales agents for every loan funded or service/product sold, both directly and indirectly through its various arms like DAC. Youngevity knows or should know about the telemarketing at issue here and willfully benefits from it.

6.      Plaintiff brings this action for statutory damages and injunctive relief under the TCPA, all arising from the illegal actions of Youngevity, together with its agents (herein referred to as "Defendant").

7.      Defendant contacted, and/or caused to be contacted on its behalf, Plaintiff and Class Members on their cellular telephones without their prior express consent within the meaning of the TCPA. Defendant violated the TCPA by contacting Plaintiff and Class Members on their cellular telephones for non-emergency purposes via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), and/or by using "an artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A), without Plaintiff's and Class Members' prior express consent within the meaning of the TCPA.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("hereinafter referred to as CAFA") codified as 28 U.S.C. § 1332(d)(2). The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of at least tens of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Further, Plaintiff alleges a national class, which will result in at least one Class member from a different state.

9.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq.*

10.     This Court has personal jurisdiction over Youngevity because the company conducts business in the State of California and its corporate headquarters are located in Chula Vista, California.

11.     Venue is proper in the United States District Court for the Northern District of California because Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced, Defendant's contacts with this District are sufficient to subject them to personal jurisdiction, and Plaintiff Canary resides in this District. *See* 28 U.S.C. § 1391.

## PARTIES

12.     Plaintiff Bryan Canary is, and at all times mentioned herein was, a resident of Castroville, California and whose cell phone number has been on the National Do Not Call ("DNC") Registry since approximately 2006.

13.     Youngevity is a Delaware corporation with corporate headquarters in Chula Vista, California. Youngevity has a number of direct marketing health supplement and coffee divisions and began offering personal and small business services as early as 2015. Youngevity refers to itself as an "independent sales organization," operating as an intermediary for a variety of lenders and companies. Youngevity refers to the commercial loan service it uses to connect consumers with small business loans as David Allen Capital, Inc. ("DAC").

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

14.     In 1991, Congress enacted the TCPA[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

15.     The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers."

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA).  The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq.*

COMPLAINT                                                                                     3

16.     Specifically, the plain language of section 227(b)(1)(A)(iii) of the TCPA prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

17.     According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

18.     The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[2]

19.     On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number are permitted only if the calls are made with the "prior express consent" of the called party.[3]

20.     In that same ruling, the FCC reiterated that "a company on whose behalf a telephone call is made bears the responsibility for any violations." *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

21.     As a result, Youngevity is liable not only where its direct employees violate the TCPA, but also for any autodialed calls and prerecorded messages by its sales agents, who Youngevity uses to sell products on its behalf, whether directly and/or through its various divisions and companies, including DAC.

22.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd. 12391, 12397 (¶ 13) (1995).

---

[2] *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14115 (¶ 165) (2003).

[3] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("2008 FCC Declaratory Ruling"), CG Docket No. 02-278, 23 FCC Rcd. 559, 564-65 (¶ 10) (2008).

23.     The autodialed and prerecorded message described herein that Plaintiff received from Wade Cordell was made "on behalf of" Youngevity and DAC (as well as the small business lenders with whom DAC partners) within the meaning of the 2008 FCC Declaratory Rulings and 47 U.S.C. § 227(c)(5).

24.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of . . . section 227(b) . . . that are committed by third-party telemarketers."[4]

25.     More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and a telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC RCD. at 6586 (¶ 34).

26.     The FCC has rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n.107.

27.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer may have apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

---

[4] In the Matter of The Joint Petition Filed by DISH Network, LLC, the United States of America, and the States of California, Illinois, North Carolina, and Ohio for Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules, et al., CG Docket No. 11-50, 28 F.C.C.R. 6574, 6574 (¶ 1) (May 9, 2013) ("May 2013 FCC Ruling").

28 FCC Rcd at 6592 (¶ 46).

28.     Youngevity is legally responsible for ensuring that all marketers that advertise the company's services and products comply with the law, even if Youngevity did not itself make the calls.

29.     As part of its marketing and advertising scheme, Youngevity enlists sales agents directly and through its various arms/companies to sell its products and services directly to consumers. Youngevity encourages these sales agents to employ phone calls and text messages as a means of marketing its products.

30.     Upon information and belief, Youngevity reviews and vets all advertising and marketing materials distributed by its agents. Youngevity's advertising policy expressly requires any advertising materials to be submitted and approved in advance of use, including text message solicitations and phone scripts, as well as any other recorded information that includes Youngevity product names.

31.     Upon information and belief, Youngevity thus "approved, wrote or reviewed [its sales agents] telemarketing scripts" within the meaning of the May 2013 FCC Ruling. *See* 28 FCC RCD at 6592 (¶ 46).

32.     Indeed, Youngevity's Vice President of Global Services, David Rutz, acknowledged in a DAC/Youngevity training video that he and Wade Cordell created and use a "voice to text" script to "move" loans marketed by Youngevity through DAC, which script is made available to other DAC/Youngevity sales agents.

33.     Finally, Youngevity's sales agents "had the authority to use [Youngevity's] trade name, trademark and service mark" with Youngevity's approval. *See id*. For example, sales agents are encouraged in training materials to refer to Youngevity's uniquely named company service arms like David Allen Capital as a "Youngevity service," falling under the Youngevity umbrella.

34.     Wade Cordell, the individual who recorded the call that Plaintiff received, was either an employee of Youngevity or served as a high-level sales agent (effectively a telemarketer) for Youngevity and DAC.

35.     As a result, Youngevity knew (or reasonably should have known) that it was violating the TCPA either directly or through its sales agents, who marketed Youngevity services on Youngevity's behalf, under Youngevity's direction and control, and for the benefit of Youngevity.

36.     Despite Youngevity's knowledge of the phone call tactics its agents and/or employees used to sell products and services on Youngevity's behalf, Youngevity failed to take effective steps within its power to prevent its employees and/or agents from engaging in the use of an autodialer and/or prerecorded voicemail messages.

37.     In any event, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

38.     Here, Plaintiff understands and believes that the prerecorded call and voicemail message was made by an authorized sales agent acting on behalf of Youngevity's David Allen Capital business loan servicing arm. Given the facts and circumstances described herein, Plaintiff's belief is reasonable.

## FACTUAL ALLEGATIONS

**Plaintiff Canary**

39.     Plaintiff Canary is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

40.     Mr. Canary is not a Youngevity or DAC customer. He has never provided his cell phone number to Youngevity or DAC, nor has he ever provided his cell phone number to any other entity whereby Youngevity became privileged to make telemarketing calls to Mr. Canary's cell phone.

COMPLAINT                                                                    7

41.     Rather, Mr. Canary's cell phone number has been on the National Do Not Call Registry since 2006.

42.     On or about March 15, 2018, Mr. Canary received a telephone call from the number 1-800-712-0830.

43.     Mr. Canary did not answer the call, and the caller left a prerecorded voicemail message that began after a short delay. The call appeared to have been made using an automated telephone dialing system because there was a multiple second delay before the recorded message began. In addition, the voice tone and background noise on the call sounds prerecorded, as opposed to a live voice.

44.     In the voicemail message, the caller refers to himself by the pseudonym "Renee" with David Allen Capital, through which Youngevity markets small business loans. The purpose of the call was to advertise loans to small business owners in amounts of $10,000 to $500,000.

45.     "Renee," the speaker in the voicemail, is actually Wade Cordell, who has been affiliated with Youngevity since his herbal supplement company, Restart Your Life, was acquired by Youngevity in 2014. Wade Cordell's wife is the "Vice Chairwoman" of Youngevity.

46.     David Rutz, the purported founder of David Allen Capital, is Youngevity's Vice President of Global Services. Rutz has thanked Wade Cordell, other Youngevity employees, and Youngevity's sales agents generally for "helping to create the buzz" around "Youngevity services."

47.     Youngevity uses training videos and calls hosted by Wade Cordell and David Rutz to train Youngevity sales agents about advertising Youngevity products and services and to recruit new Youngevity customers. Both Rutz and Cordell represent themselves as part of Youngevity.

48.     Rutz has stated in a DAC/Youngevity training video that he and Wade Cordell created a "voice to text" script to "move" loans marketed by Youngevity through DAC. Rutz further discusses how he gained business through cold calling and encourages other sales agents to do the same.

49.     The prerecorded voicemail message Mr. Canary received is the first step in a sophisticated and fully automated process. The message asks Mr. Canary to call 1-800-712-0830

and leave contact information. Calling 1-800-712-0830 directs the caller to the website

myvipfunding.com, which then directs the viewer to complete an application form for David Allen

Capital funding.

50.     If an individual completes the form listed on the website, the individual is emailed a

"DAC Funding Prequalification" notification which describes further DAC loan application

materials. The email states, "[t]he DAC client support specialist assigned to your account is Wade

Cordell." According to a marketing/training video for a variety of Youngevity services and

products conducted by Youngevity's Vice President of Global Services, David Rutz, as soon as a

potential customer fills out a pre-qualification form, "we [meaning Youngevity] take over."

51.     Had Mr. Canary completed the form on myvipfunding.com, and subsequent

application forms sent to him thereafter, he would have been directed to a DAC sales agent who

would have attempted to sell him a small business loan or other service from Youngevity's

portfolio of personal and small business services.

**Youngevity's Marketing Strategy**

52.     Youngevity is, and at all times mentioned herein was, a "person," as defined by

47 U.S.C. § 153(39).

53.     Youngevity was founded in 1997 by Dr. Joel Wallach and was originally an herbal

supplement company that operated through direct sales.

54.     Today, Youngevity sells services and products in a variety of markets, including but

not limited to herbal supplements, jewelry, nutritional products, coffee, sports, and weight

management products, as well as personal and small business services.

55.     The business services offered by Youngevity include small business loans, merchant

processing, telephone and internet services, cloud services, enterprise IT, and "Professional

Managed Services"

56.     The personal services offered by Youngevity include CartRipple: Online Savings Portal, Telecare, Travel and Entertainment, ID Protection and Credit Monitoring, Tech Support, and Roadside Assistance.

57.     Youngevity sells its products and services through multi-level marketing direct selling structures, using its various service arms and sales agents as an intermediary to market and connect customers with service and loan vendors.

58.     Agents selling on behalf of one Youngevity product or service are expected and encouraged to market and sell all of Youngevity's products and services. Youngevity thus directly solicits customers for all of its business services by, for example, promoting the small business loans offered by its DAC arm.

59.     Upon information and belief, Youngevity receives commissions from these service and loan vendors for any sales made. In return, Youngevity pays its sales agents a fee each month for the life of the service customer relationship. Youngevity pays this incentive fee both directly and indirectly through its service arms, like DAC.

60.     Youngevity oversees and directs the actions of its employees, contractors, agents, and divisions generally, but particularly with respect to telemarketing and advertising.

61.     Youngevity uses its employees and sales agents to represent the company to consumers, including non-customers.

62.     Youngevity expressly and publicly authorizes its agents to solicit new customers through the use of telephones.

63.     Upon information and belief, Youngevity directly solicits business using telemarketing calls and authorizes its agents to solicit business using telemarketing calls.

64.     In 2016, Youngevity appointed David Rutz as Vice President of Global Services to lead Youngevity's nascent services division. Simultaneously, Youngevity began offering commercial and personal services in addition to product sales.

65.     Youngevity now endeavors to offer businesses an array of services, at the center of which is David Allen Capital ("DAC"), through which Youngevity markets small business loans.

66.     Like the sale of Youngevity's other products, Youngevity's business services are intended to be sold via direct marketing, including through "Small Business Capital Agents," who can earn personal commissions for each small business owner they successfully engage in a Youngevity loan or service.

67.     Youngevity facilitates online trainings and weekly calls for its sales agents selling Youngevity's array of business and personal services. Youngevity awards agents with bonuses proportional to how many Youngevity Services are sold by an agent or how many agents that agent is then able to recruit.

68.     Thus, Youngevity agents selling DAC loans are also expected to sell all of Youngevity's other business services and are rewarded for doing so.

69.     Youngevity encourages DAC and other service agents to engage in a sales practice referred to as "bird-dogging," a practice whereby an agent directs a prospective customer to the DAC or other Youngevity website to begin the loan application process without engaging in direct personal contact.

70.     Youngevity closely regulates the advertising and lead generating practices of its employees and agents. It has established policies for advertising, as well as an approval process that must be completed before any advertisement may be issued.

71.     Youngevity thus maintains control over its agents' actions, both as to telemarketing and other activities.

72.     Youngevity further directs the content of its agents' advertising, retaining absolute and unilateral control over the same.

73.     Specifically, the "Youngevity Distributor Advertising Approval Process and Approval Application" requires that "any [advertising] materials that are not provided by [Youngevity] must be approved in advance by submitting said material in concert with the Youngevity Advertising Approval Application." The advertising policy explicitly states that "Text Message Solicitations" and "Phone Scripts" are "advertising materials" and must be approved by Youngevity prior to use.

74. To facilitate the growth of its business services arm, Youngevity allows employees and agents, like Wade Cordell, to market loans through David Allen Capital by making autodialed and prerecorded calls to non-customers for the purpose of selling Youngevity products and services.

75. Youngevity knew the method and content its agents and employees, including Wade Cordell, used to advertise DAC loans and other services and knew or should have known that the interest and business generated as a result arose from autodialed and prerecorded calls made on Youngevity's behalf. Youngevity willfully accepted the benefits of these calls, even though it knew about the TCPA.

76. At all relevant times, Youngevity had the right to instruct each and every one of its agents not to sell its products or services through unlawful telemarketing, or to modify their telemarketing practices or methodologies, but chose instead <u>not</u> to prohibit such robocalling for its own pecuniary gain.

77. Youngevity further knowingly and actively accepts commission and/or business that is generated through the illegal telemarketing calls complained of herein. Indeed, Youngevity pays bonuses to its sales agents for any services they sell.

78. That is because Youngevity profits off such business. Upon information and belief, for example, Youngevity is not the actual lender of the loans it markets through its DAC service arm. Rather, Youngevity serves as a lead generator and intermediary, connecting small business owners with lenders, such as OnDeck and CAP Capital. Youngevity thus makes its money in the form of commissions from every loan generated.

**Subagency/Formal Agency/Actual Authority**

79. With regard to torts committed by an agent, the Restatement provides:

§ 7.04 Agent Acts With Actual Authority

A principal is subject to liability to a third party harmed by an agent's conduct when the agent's conduct is within the scope of the agent's actual authority or ratified by the principal; and
(1) the agent's conduct is tortious, or

(2) the agent's conduct, if that of the principal, would subject the principal to tort liability. *See* RESTATEMENT (THIRD) OF AGENCY § 7.04 cmt. d(2) (2006).

80.     The purpose of Youngevity's sales agents is to serve Youngevity by marketing Youngevity's products and services, including, *inter alia*, soliciting applications for loans from small business owners through DAC.

81.     Wade Cordell and Youngevity's other sales agents had the actual authority of Youngevity to make the complained-of calls.

82.     Upon information and belief, Youngevity provided its agents permission to perform the telemarketing that is the subject of this lawsuit. Alternatively, Youngevity willfully looked the other way so that it could benefit from the telemarketing but still take the position that it is not responsible or liable for wrongdoing associated with such.

83.     Youngevity and its agents employed an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), to contact consumers such as Plaintiff. At least some of those calls, such as the call to Plaintiff, were made to cellular telephones.

84.     Youngevity and its agents employ "an artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A) to communicate with consumers such as Plaintiff on their cellular telephones.

85.     The telephone number that Wade Cordell, acting on behalf of Youngevity, called to contact Plaintiff, with an "artificial or prerecorded voice" made by an "automatic telephone dialing system," was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

86.     Plaintiff and other class members did not provide their "prior express consent" allowing Wade Cordell or any other Youngevity agent to place telephone calls similar to the one Plaintiff received on his cellular phone utilizing an "artificial or prerecorded voice" or by an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A).

87.     The telephone call Wade Cordell, acting on behalf of Youngevity, made to Plaintiff's cellular phone, as well as other such similar calls that Wade Cordell made to Class Members, were not made "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

88.     The telephone call made by Wade Cordell, acting on behalf of Youngevity, to Plaintiff's and other Class Members' cellular phones utilizing an "artificial or prerecorded voice" for non-emergency purposes and in the absence of Plaintiff's and other Class Members' prior express consent, violated 47 U.S.C. § 227(b)(1)(A).

89.     Likewise, the call made by Wade Cordell, acting on behalf of Youngevity, to Plaintiff's and other Class Members' cellular phones placed by an "automatic telephone dialing system" for non-emergency purposes and in the absence of Plaintiff's and other Class Members' prior express consent, violated 47 U.S.C. § 227(b)(1)(A).

90.     Under the TCPA, the burden is on the Defendant to demonstrate that Plaintiff and Class Members provided prior express written consent within the meaning of the statute.[5]

91.     Youngevity acted willfully, knowingly, and without regard to the TCPA when it caused the call to be made to Plaintiff as described above.

92.     Because of the above facts, and additional facts that Plaintiff may learn through discovery, Wade Cordell was an authorized agent of Youngevity when he made the call to Plaintiff and Class Members, and Youngevity is liable for such calls.

**Apparent Authority**

93.     By using sales agents to make calls on behalf of Youngevity for purposes of generating sales, Youngevity "manifests assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency § 1.01.

94.     Youngevity sales agents have authority to use Youngevity's "trade name, trademark and service mark[s]" with Youngevity's approval, as discussed in the May 2013 FCC Ruling.

95.     Youngevity also aggregates, uses, and transfers customer information acquired by or obtained at the direction of its sales agents for purposes of marketing and selling the company's products and services.

---

[5] *See 2008 FCC Declaratory Ruling*, 23 FCC Rcd. at 565 (¶ 10).

96.     Similarly, sales agents marketing Youngevity services "manifest[] assent or otherwise consent[] . . . to act" on behalf of Youngevity, as described in the Restatement (Third) of Agency, by, for example, promoting and selling Youngevity products and services.

97.     As such, Youngevity's sales agents were apparent agents of Youngevity.

98.     Indeed, Youngevity enters into agreements with its sales agents, either directly or through its service arms like DAC, whereby, for example, DAC expressly grants sales agents the authority to sell products and services marketed by Youngevity through DAC.

99.     And according to Youngevity's VP of Global Services, David Rutz, because DAC is a "division" of Youngevity, agents of Youngevity are agents of DAC and vice versa. Youngevity also encourages DAC sales agents not only to promote loans through DAC, but to promote all of Youngevity's other services as well.  Upon information and belief, the prerecorded call to plaintiff was designed not only to advertise DAC products and services, but also had the purpose of advertising other Youngevity products and services, directly.

**Ratification**

100.     In the alternative, Youngevity ratified its sales agents' illegal marketing by knowingly accepting the benefits of these agents' unlawful telemarketing activities, which provided Youngevity and its companies with additional business prospects.

101.     Youngevity was aware that Wade Cordell and other agents like him were making calls using an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system" when Youngevity accepted the sales leads, and business and monetary benefits resulting therefrom. Indeed, Youngevity's business model for its services divisions appears directed primarily at generating leads for companies who then pay Youngevity a commission for any sales that are consummated.

102.     Even if Youngevity did not realize that specific leads were generated through unlawful telemarking activities, Youngevity made a conscious choice to accept and benefit from the resulting business without adequate knowledge of its source.

103.    Because Youngevity accepted the calls' benefits, Youngevity cannot avoid the burden associated with its ratification.

104.    Vicarious liability for TCPA violations can arise out of ratification. As the FCC stated:

> Restatement (Third) of Agency § 2.03, cmt. c. As commonly understood under modern agency principles reflected in the Third Restatement, such apparent authority can arise in multiple ways, and does *not* require that "a principal's manifestation must be directed to a specific third party in a communication made directly to that person. *Id.*, reporter's note a. Rather, "a principal may create apparent authority by appointing a person to a particular position." *Id.* Similarly, "a principal may permit an agent to acquire a reputation of authority in an area or endeavor by acquiescing in conduct by the agent under circumstances likely to lead to a reputation." *Id.*, cmt. c. And "[r]estrictions on an agent's authority that are known only to the principal and the agent do not defeat or supersede the consequences of apparent authority for the principal's legal relations" with others." *Id.* In such circumstances, for example, the presence of contractual terms purporting to forbid a third-party marketing entity from engaging in unlawful telemarketing activities would not, by themselves, absolve the seller of vicarious liability.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6586, n 102.

## CLASS ACTION ALLEGATIONS

105.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

106.    Plaintiff brings this action individually and on behalf of all other persons similarly situated (hereinafter referred to as "the Class") pursuant to Federal Rule of Civil Procedure 23.

107.    Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> All persons within the United States who received a non-emergency telephone call from Youngevity, a Youngevity sales agent, or a Youngevity company/division to a cellular telephone through the use of an autodialer and/or voice message that had been recorded ahead of time, which was made for the purpose of soliciting the sale of products or services.

Collectively, all these persons will be referred to as "Class members." Plaintiff represents, and is a member of, the Class.

108.    Excluded from the Class is the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's employees, any Judge to whom this action is assigned

and any member of such Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

109.    Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds.

110.    Plaintiff and all members of the Class have been harmed by the acts of the Defendant.

111.    This Class Action Complaint seeks injunctive relief and money damages.

112.    The joinder of all Class Members is impracticable due to the size and relatively modest value of each individual claim.

113.    Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

114.    Further, the Class can be identified easily through records maintained by Youngevity and/or its telemarketing agents.

115.    There are well defined, nearly identical, questions of law and fact affecting all parties.

116.    The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class Members.

117.    Such common questions of law and fact include, but are not limited to, the following:

a.    Whether Youngevity employees or agents, acting on behalf of Youngevity, used an automatic telephone dialing system in making non-emergency calls to Class Members' cell phones;

b.    Whether Youngevity employees or agents, acting on behalf of Youngevity, used an artificial or prerecorded voice in its non-emergency calls to Class Members' cell phones;

c.    Whether Youngevity can meet its burden of showing it obtained prior express consent (*i.e.*, written consent that is clearly and unmistakably stated), to make such calls;

d.    Whether Defendant's conduct was knowing and/or willful;

e.      Whether Defendant is liable for statutory damages; and

f.      Whether Defendant should be enjoined from engaging in the conduct complained of herein in the future.

118.    As someone who received non-emergency telephone calls using an automatic telephone dialing system or an artificial or prerecorded voice, without providing his prior express consent to the Defendant within the meaning of the TCPA, Plaintiff asserts claims that are typical of each Class Member who also received such phone calls.

119.    Further, Plaintiff will fairly and adequately represent and protect the interests of the Class.

120.    Plaintiff has no interests which are antagonistic to any member of the Class.

121.    Plaintiff has retained counsel experienced in handling class action claims involving violations of federal consumer protection statutes, including claims under the TCPA.

122.    A class action is the superior method for the fair and efficient adjudication of this controversy.

123.    Class wide relief is essential to compel the Defendant to comply with the TCPA.

124.    The interest of the Class Members in individually pursuing claims against the Defendant is slight because the statutory damages for an individual action are relatively small, and are therefore not likely to deter the Defendant from engaging in the same behavior in the future.

125.    Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class members, by definition, did not provide the prior express consent required under the statute to authorize such calls to their cellular telephones.

126.    Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

127.    Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

### FIRST COUNT

### STATUTORY VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 *ET SEQ.*

128.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

129.    The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

130.    As a result of Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Class Members are entitled to an award of $500 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

131.    Plaintiff and Class Members are also entitled to and do seek injunctive relief prohibiting the Defendant's violation of the TCPA in the future.

132.    Plaintiff and Class Members are also entitled to an award of attorneys' fees and costs as provided by law.

### SECOND COUNT

### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*

133.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

134.    There is no reason for defendant to use a prerecorded message during a telephone call, other than to facilitate making multiple identical calls, each designed for the same purpose: to sell Youngevity products and services. Upon information and belief, the robocall complained of

herein that Plaintiff received was one of numerous and multiple knowing and/or willful violations of the TCPA by Defendant, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

135.   As a result of the Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and each member of the Class is entitled to treble damages of up to $1,500 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

136.   Plaintiff and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by the Defendant in the future.

137.   Plaintiff and Class members are also entitled to an award of attorneys' fees and costs as provided by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a jury trial on all claims so triable and respectfully requests that the Court grant Plaintiff and all Class members the following relief against the Defendant:

A.   Injunctive relief prohibiting such violations of the TCPA by the Defendant in the future;

B.   As a result of the Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seek for himself and each Class member treble damages, as provided by statute, of up to $1,500 for each and every call that violated the TCPA;

C.   As a result of Defendant's statutory violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member $500 in statutory damages for each and every call that violated the TCPA;

E.   An award of attorneys' fees and costs to counsel for Plaintiff and the Class;

F.   An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems

appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

      G.     Such other relief as the Court deems just and proper.

### JURY DEMAND

    Plaintiff demands trial by jury on all counts for which a jury trial is permitted.

Dated: May 31, 2018

Respectfully submitted,

*/s/    Sabita J. Soneji*

**TYCKO & ZAVAREEI LLP**
Sabita J. Soneji (California Bar No. 224262)
483 Ninth Street, Suite 200
Oakland, CA 94607
Telephone: (510) 254-6808
Facsimile: (510) 210-0571
Email: ssoneji@tzlegal.com

**TYCKO & ZAVAREEI LLP**
Anna C. Haac (*pro hac vice* forthcoming)
1828 L Street, NW- Suite 1000
Washington, D.C 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
Email: ahaac@tzlegal.com

**BURKE LAW OFFICES, LLC**
Alexander H. Burke (*pro hac vice* forthcoming)
155 N. Michigan Ave., Suite 9020
Chicago, IL 60651
Telephone: (312) 729-5288
Email: aburke@burkelawllc.com

*Attorneys for Plaintiff and the Putative Class*