ROBERT H. GRIFFITH (admitted *pro hac vice*)
  rgriffith@foley.com
**FOLEY & LARDNER LLP**
321 North Clark Street, Suite 2800
Chicago, IL 60654
Telephone:  312.832.4500
Facsimile:   312.832.4700

IRINA N. KASHCHEYEVA (*pro hac vice* application forthcoming)
  ikashcheyeva@foley.com
**FOLEY & LARDNER LLP**
500 Woodward Avenue, Suite 2700
Detroit, MI 48226
Telephone:  313.234.7100
Facsimile:   313.234-2800

MICHAEL A. NARANJO, CA Bar No. 221449
  mnaranjo@foley.com
**FOLEY & LARDNER LLP**
555 California Street, Suite 1700
San Francisco, CA 94104-1520
Telephone:  415.434.4484
Facsimile:   415.434.4507

Counsel for Defendant YOUNGEVITY
INTERNATIONAL, INC.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| BRYAN CANARY, individually and on behalf of similarly situated, | Case No. 5:18-cv-03261-EJD |
| Plaintiff, | **DEFENDANT'S MOTION TO DISMISS AND TO STRIKE CLASS ALLEGATIONS AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** |
| vs. | |
| YOUNGEVITY INTERNATIONAL, INC., | Judge:  Hon. Edward J. Davila |
| Defendant. | Hearing Date: November 15, 2018 |
| | Time:        9 a.m. |
| | Place:      Courtroom 4 (5th Floor) |
| | 280 South 1st Street |
| | San Jose, CA 95113 |
| | Case Filed:    May 31, 2018 |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................................I

TABLE OF AUTHORITIES ........................................................................................ III

NOTICE OF MOTION AND MOTION ........................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

    INTRODUCTION ..................................................................................................... 1

    STATEMENT OF ISSUES TO BE DECIDED ....................................................... 3

    ALLEGATIONS IN THE COMPLAINT ................................................................ 3

    MOTION TO DISMISS AND MOTION TO STRIKE STANDARDS ................... 6

    ARGUMENT ............................................................................................................ 6

        I.     CANARY FAILS TO STATE DIRECT LIABILITY CLAIM
AGAINST YOUNGEVITY. ........................................................... 6

                A.    Canary's Complaint Fails To Allege That Youngevity
Placed The Call At Issue, Or That It Was Placed Directly
On Youngevity's Behalf. ................................................... 7

                B.    Youngevity Is Not Liable For Actions Of DAC, A
Separate Corporate Entity. ................................................ 7

                C.    Canary Does Not, And Cannot, Allege That The Call Was
Made By A Youngevity Employee. ..................................... 8

        II.    CANARY FAILS TO STATE A CLAIM FOR VICARIOUS
LIABILITY AGAINST YOUNGEVITY. ........................................ 9

                A.    Canary Fails To Plead Sufficient Facts To Allege Formal
Agency/Actual Authority. ................................................. 10

                        1.    Canary Does Not Allege That Youngevity
Authorized The Call, And Youngevity In Fact
Prohibits Any Advertising On Its Behalf In
Violation Of The TCPA. .......................................... 10

                        2.    Canary Does Not Sufficiently Allege
Youngevity's Control Over The Entity Making
The Call At Issue. .................................................... 12

                        3.    Youngevity Makes Clear That Its Distributors Are
Independent Contractors And That Youngevity
Does Not "Dictate Their Selling Methods." ............ 14

4.    Canary's Remaining Allegations Regarding
      Youngevity's Business Practices Are Insufficient
      To State A Vicarious Liability Claim. ...................................14

5.    Canary's Allegations Regarding Wade Cordell
      Fail To Support The Inference That Cordell Was
      Youngevity's Agent. ..............................................................17

B.    Canary Fails To State A Claim Of Apparent Authority. ...................18

C.    Canary Fails To Plead Facts To Allege Ratification. ........................19

III.   THE COURT MUST DISMISS COUNT II OF THE
       COMPLAINT ALLEGING KNOWING OR WILLFUL
       VIOLATION OF THE STATUTE. .................................................................20

IV.    THE COURT SHOULD STRIKE PROPOSED CLASS
       ALLEGATIONS ...........................................................................................21

CONCLUSION ...........................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abante Rooter & Plumbing v. Farmers Grp., Inc.*,
   No. 17-CV-03315, 2018 WL 288055 (N.D. Cal. Jan. 4, 2018)........................16

*Arbon Valley Solar LLC v. Thomas & Betts Corp.*,
   No. 4:16-CV-00070, 2017 WL 5613009 (D. Idaho Nov. 21, 2017) ..................20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).........................................................6, 9, 17

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................6

*Brazil v. Dell, Inc.*,
   No. 07–1700, 2008 WL 2693629 (N.D. Cal. July 7, 2008).......................23

*Bush v. Vaco Tech. Servs., LLC*,
   No. 17-CV-05605-BLF, 2018 WL 2047807 (N.D. Cal. May 2, 2018) ................22

*C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*,
   213 F.3d 474 (9th Cir. 2000) ...................................................18

*Castaneda v. Fila USA, Inc.*,
   No. 11-CV-1033-H BGS, 2011 WL 7719013 (S.D. Cal. Aug. 10, 2011) .............22

*Chen v. Allstate Ins. Co.*,
   No. C 13-0685 PJH, 2013 WL 2558012 (N.D. Cal. June 10, 2013) ................21

*Davis v. HSBC Bank Nevada, N.A.*,
   691 F.3d 1152 (9th Cir. 2012) ..................................................11

*Delgado v. United Facilities, Inc.*,
   No. 2:11-CV-00485, 2012 WL 10717266 (E.D. Cal. Feb. 21, 2012) ...............12

*Elf-Man, LLC v. Cariveau*,
   No. C13-0507, 2014 WL 202096 (W.D. Wash. Jan. 17, 2014)....................9, 15

*Employee Painters' Tr. v. McIntosh Mirror Door & Glass Inc.*,
   No. C13-0108, 2013 WL 2897970 (W.D. Wash. June 13, 2013).....................17

*Enoh v. Hewlett Packard Enter. Co.*,
   No. 17-CV-04212-BLF, 2018 WL 3377547 (N.D. Cal. July 11, 2018)................6

*Esoimeme v. Wells Fargo Bank*,
   No. CIV S-10-2259, 2011 WL 3875881 (E.D. Cal. Sept. 1, 2011)..................18

*Figueroa v. Law Offices of Patenaude & Felix, A.P.C.*,
    No. EDCV14325, 2014 WL 12597118 (C.D. Cal. May 30, 2014) ....................................11

*Henderson v. United Student Aid Funds, Inc.*,
    No. 13CV1845, 2017 WL 766548 (S.D. Cal. Feb. 28, 2017).........................................10, 19

*Hovsepian v. Apple, Inc.*,
    No. 08–5788 JF (PVT), 2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) .........................22

*Int'l Audiotext Network v. Am. Tel. & Tel. Co.*,
    62 F.3d 69 (2d Cir. 1995)................................................................................................12

*Jones v. All Am. Auto Prot., Inc.*,
    No. 314CV00199, 2015 WL 7566685 (D. Nev. Nov. 24, 2015) ....................................13

*Jones v. Royal Admin. Servs., Inc.*,
    887 F.3d 443 (9th Cir. 2018) ..................................................................................*passim*

*Kas v. Mercedes-Benz USA, LLC*,
    No. CV 11-1032-VBF(PJWX), 2011 WL 13238744 (C.D. Cal. Aug. 23, 2011)...............22

*Kristensen v. Credit Payment Servs., Inc.*,
    879 F.3d 1010 (9th Cir. 2018) ................................................................................*passim*

*Kristensen v. Credit Payment Servs. Inc.*,
    No. 2:12-CV-00528, 2015 WL 4477425 (D. Nev. July 20, 2015) ..................................15

*Linlor v. Five9, Inc.*,
    No. 17CV218, 2017 WL 2972447 (S.D. Cal. July 12, 2017)..........................................17

*Linlor v. Five9, Inc.*,
    No. 17CV218, 2017 WL 5885671 (S.D. Cal. Nov. 29, 2017).....................................10, 22

*Lyons v. Bank of Am., NA*,
    No. 11–1232, 2011 WL 6303390 (N.D. Cal. Dec. 16, 2011) .........................................22

*Makaron v. GE Sec. Mfg., Inc.*,
    No. CV-14-1274, 2015 WL 3526253 (C.D. Cal. May 18, 2015) ...........................11, 14, 16

*Meyer v. Capital All. Grp.*,
    No. 15-CV-2405, 2017 WL 5138316 (S.D. Cal. Nov. 6, 2017) ......................................15

*Murphy v. Fullbright*,
    No. 12-CV-885, 2012 WL 4754730 (S.D. Cal. Oct. 4, 2012) ........................................18

*Naiman v. TranzVia LLC*,
    No. 17-CV-4813, 2017 WL 5992123 (N.D. Cal. Dec. 4, 2017)........................13, 14, 18, 20

*Panacci v. A1 Solar Power, Inc.*,
    No. 15-CV-00532, 2015 WL 3750112 (N.D. Cal. June 15, 2015)....................................8

*Phan v. Grand Bahama Cruise Line, LLC,*
   No. 15-CV-05019, 2016 WL 1427648 (N.D. Cal. Apr. 12, 2016) ...................................20

*In re Portfolio Recovery Assocs., LLC, Tel. Consumer Prot. Act Litig.,*
   No. 11MD2295, 2014 WL 223557 (S.D. Cal. Jan. 8, 2014) .....................................2, 8

*Price v. Town of Dewey-Humboldt,*
   No. CV-12-8086, 2012 WL 2415206 (D. Ariz. June 26, 2012) ...................................13

*Ris v. ICollect.com, Corp.,*
   No. 8:16-CV-2414-T-30AAS, 2017 WL 2620545 (M.D. Fla. June 16, 2017) .................21

*Roe v. Unocal Corp.,*
   70 F. Supp. 2d 1073 (C.D. Cal. 1999) .....................................................................12

*Sanders v. Apple, Inc.,*
   672 F. Supp.2d 978 (N.D. Cal. 2009) ..................................................................6, 22

*Sandoval v. Ali,*
   34 F. Supp. 3d 1031 (N.D. Cal. 2014) .......................................................................22

*Sidney–Vinstein v. A.H. Robins Co., Inc.,*
   697 F.2d 880 (9th Cir. 1983) ...............................................................................6, 24

*Somers v. Apple, Inc.,*
   729 F.3d 953 (9th Cir. 2013) .................................................................................6, 9

*Sprewell v. Golden State Warriors,*
   266 F.3d 979 (9th Cir. 2001) .......................................................................................6

*Thomas v. Taco Bell Corp.,*
   879 F. Supp. 2d 1079 (C.D. Cal. 2012), *aff'd,* 582 F. App'x 678 (9th Cir. 2014) ...................... *passim*

*Tietsworth v. Sears,*
   720 F. Supp. 2d 1123 (N.D. Cal. 2010) .....................................................................22

*United States v. Bonds,*
   608 F.3d 495 (9th Cir. 2010) ...........................................................................13, 14

*Wady v. Provident Life & Accident Ins. Co. of America,*
   216 F. Supp. 2d 1060 (C.D. Cal. 2002) .....................................................................8

*Wilson v. Metals USA, Inc.,*
   No. CIV. S-12-0568, 2012 WL 5932990 (E.D. Cal. Nov. 27, 2012) ...........................8

**Statutes**

47 U.S.C. § 227 ........................................................................................... *passim*

**Other Authorities**

*In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574
(2013) ..................................................................................................................9

Restatement (Second) of Agency § 8 (1958) .........................................................18

## NOTICE OF MOTION AND MOTION

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 15, 2018, at 9 a.m., or as soon thereafter as the matter may be heard in the above-entitled court, located at Courtroom 4 (5th Floor), 280 South 1st Street, San Jose, CA 95113, Defendant YOUNGEVITY INTERNATIONAL, INC. ("Youngevity") will and hereby does move the Court, pursuant to Fed. R. Civ. P. 12(b)(6), for an order dismissing Plaintiff's claims against Youngevity, and pursuant to Fed. R. Civ. P. 12(f), for an order striking class allegations. This motion is based on this notice of motion, the accompanying memorandum of points and authorities, declarations, papers and pleadings on file in this action, such other evidence and argument as may be presented at or before any hearing on this motion, and all matters of which the Court may take judicial notice.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff Bryan Canary ("Canary") brings this putative class action purporting to assert claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), against the sole defendant Youngevity International, Inc. ("Youngevity"). Yet, the case does ***not*** arise out of any calls placed by Youngevity. Rather, it arises out of a ***single*** voicemail, which Canary alleges is made on behalf of David Allen Capital, Inc. ("DAC"). (Compl. ¶ 2.) Canary at some points suggests that DAC is a "division" of Youngevity, but he tacitly admits it is incorporated as a separate entity. (*Id.*) Canary alleges that the call on behalf of DAC offered a small business loan that does not mention or refer to Youngevity, does not originate from a phone number associated with Youngevity, does not refer to a Youngevity website or a Youngevity representative, and does not promote a loan issued by Youngevity. (Compl. ¶¶ 42-44, 49, 66, 78.) Quite simply, Canary has sued the wrong party. But in an attempt to pursue funds from Youngevity, Canary's Complaint sets forth a hodge-podge of conclusory allegations unsupported by facts, made "upon information and belief" or "in the alternative," that seek to lump Youngevity and DAC together.[1] The Court should dismiss this Complaint for the following reasons:

---

[1] Youngevity disputes many allegations in this Complaint, some of which (including, most notably, the assertion that the call at issue was prerecorded or made by Wade Cordell or approved by Youngevity, or

1. ***Direct Liability.*** Canary cannot maintain a direct liability claim against Youngevity. He states that the call was made "on behalf of" DAC—which is a wholly separate company. Because DAC is a separate corporation (registered under the laws of the state of Michigan), Youngevity is not liable for DAC's acts (unless the entities are mere *alter egos* of one another, which is not asserted here). *In re Portfolio Recovery Assocs., LLC, Tel. Consumer Prot. Act Litig.*, No. 11MD2295, 2014 WL 223557, at *3 (S.D. Cal. Jan. 8, 2014).

2. ***Formal Agency/Actual Authority.*** Canary does not allege any facts indicating that Youngevity controlled the manner and means by which the caller reached out to Canary, which other courts have held is necessary to demonstrate actual authority. *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 451 (9th Cir. 2018); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1085 (C.D. Cal. 2012), *aff'd*, 582 F. App'x 678 (9th Cir. 2014). Canary does not, and cannot, allege that Youngevity dictated to the caller the number of calls to be placed, the hours of operation, the equipment to be used, the phone numbers to be called, or other means and methods for placing the calls. Further, Youngevity's policies make clear that distributors are independent contractors who have no authority to hold themselves out as Youngevity's agents, and who must comply with telemarketing laws like the TCPA. For these reasons, Canary fails to state a claim based on formal agency/actual authority.

3. ***Apparent Authority.*** Canary's apparent authority claim must be dismissed because Canary does not allege that he relied to his detriment on anything Youngevity did or said with respect to the caller's authority to represent Youngevity. Indeed, Canary does not even allege that he applied for a loan or otherwise followed up on the voicemail at issue, so as to have suffered any detriment at all.

4. ***Ratification.*** Canary's ratification claim must be dismissed because, as explained above, Canary does not sufficiently allege actual authority. "The doctrine of ratification is not available unless the actor acted or purported to act as an agent on the person's behalf." *Kristensen v. Credit Payment Servs., Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018). In addition, Canary did not plead any facts to suggest that Youngevity knew or should have known material facts about the caller's acts. *Id.* at 1014. Canary's ratification claim also fails because Canary did not ultimately take out any loans from any Youngevity source, and the voicemail at issue did not result in any benefit to Youngevity.

5. ***Willful/Knowing Violation.*** Count II in Canary's Complaint seeking treble damages must be dismissed. Canary does not plead any facts to suggest that Youngevity knew of the call at issue, or directed this call to be placed in knowing or intentional violation of the TCPA.

To the extent any of Canary's claims survive Youngevity's Motion, the Court should strike the class allegations. The proposed definition includes claims that are significantly broader than, and different from, Canary's claim, includes members who provided consent and have no valid claims, is vague so as to make membership in the class unascertainable, and involves an improper failsafe class.

---

that Wade Cordell was Youngevity's) are entirely baseless. However, for purposes of this Motion, and as discussed below, Youngevity will assume non-conclusory factual allegations to be true.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Court should dismiss Canary's direct liability claim against Youngevity where Canary does not adequately allege who made the call at issue or that the caller was Youngevity's employee, and, at most, alleges that the calls were placed by DAC, a separate corporate entity.

2. Whether the Court should dismiss Canary's formal agency/actual authority claim where Canary fails to allege that Youngevity controlled the means and methods of the caller's outreach to Canary and where Youngevity's distributors are independent contractors whom Youngevity requires to comply with the TCPA.

3. Whether the Court should dismiss Canary's apparent authority claim where Canary did not rely on anything Youngevity said or did, and did not suffer a detriment as a result of the call based on any (mis)understanding that the call was from or on behalf of Youngevity.

4. Whether the Court should dismiss Canary's ratification claim where Canary cannot establish actual authority, has not alleged that Youngevity was aware of any facts that should have reasonably triggered further investigation, and where Youngevity did not receive any benefits from the call.

5. Whether the Court should dismiss Count II of the Complaint seeking award of treble damages under the TCPA where the Complaint does not allege any facts indicating that the sole call at issue was placed with Youngevity's intent or knowledge.

6. Whether the Court should strike class allegations in the Complaint where the proposed class definition is vastly overbroad and includes claims very different from Canary's, and contains individuals who are current customers or who have consented to automated outreach, and where the membership in the proposed class is unascertainable and the class involves an improper failsafe class.

## ALLEGATIONS IN THE COMPLAINT

Canary's Complaint consists in large part of recitations of the applicable legal standard (*see, e.g.*, Compl. ¶¶ 14-28, 37, 79-80, 89-92, 104), conclusory allegations regarding Youngevity's alleged "marketing strategy" (¶¶ 52-78), "upon information and belief" and "either-or" allegations not backed by any facts (*id.* ¶¶ 5, 30-31, 34, 59, 63, 78, 82, 99, 134), class allegations (¶¶ 105-126), and formulaic recitations of the cause of action (¶¶ 128-137). Out of the entire 137-paragraph Complaint, only half a dozen paragraphs describe Canary's actual experience as relevant to this case. (Compl. ¶¶ 39-44, 49.)

***Allegations Regarding Youngevity.*** Youngevity, the sole defendant in this case, is an independent intermediary marketing organization that connects individual or business customers with various products and services offered by independent companies and lenders. (Compl. ¶¶ 13, 57, 78.)

Youngevity has been in business for over twenty years, and recently began working with small business owners, offering small business loans and other small business products. (*Id.* ¶¶ 53, 64-65.) Youngevity works through various levels of distributors ("contractors, agents, and divisions") to match customers with various sellers and service providers. (*Id.* ¶¶ 52, 57, 59-60.) The distributors (and allegedly Youngevity) receive commissions on the loans they generate. (*Id.* ¶ 66.)

*Allegations Regarding DAC*. The Complaint implicitly recognizes that David Allen Capital, Inc. is a separate corporate entity from Defendant. (*Id.* ¶ 2.) According to Canary, DAC specializes in offering products and services, including loans, to small business owners. (*Id.* ¶¶ 13, 65.) Canary attempts to portray a close connection between Defendant and DAC by referring to DAC variously as a "Youngevity division," a "commercial loan service [Youngevity] uses to connect consumers with small business loans," "Youngevity's service arm," and a company "under the Youngevity umbrella." (*Id.* ¶¶ 2-3, 13, 33, 78, 98-99.) The Complaint then lumps many allegations involving DAC and Youngevity together, and calls distributors "Youngevity's sales agents." (*Id.* ¶¶ 4-5, 32, 34, 48, 98.)

*Allegations Regarding The Voicemail At Issue.* Canary received the sole call at issue—which he did not answer—on March 15, 2018. (*Id.* ¶ 42.) The caller left a voicemail, and Canary alleges that the voicemail was prerecorded and, further, placed via the automatic telephone dialing system ("ATDS"). (*Id.* ¶ 43.) According to the Complaint, the speaker in the voicemail introduced himself as Renee with DAC, and referenced loans for small business owners in the amounts of $10,000 to $500,000. (*Id.* ¶¶ 43-44.) The Complaint does not identify Canary's phone number to which the call was allegedly placed, but alleges it was a cell phone. (*Id.* ¶ 12.) Apart from several conclusory allegations (*id.* ¶¶ 85-89), the Complaint does not offer any facts indicating that the person who prerecorded the message was the same person who allegedly dialed Canary's number.

Canary speculates that Renee in the voicemail was simply a "pseudonym," and the message was recorded by someone named Wade Cordell. (*Id.* ¶¶ 34, 44-45.) Canary alleges that Cordell was either an employee of Youngevity or a high-level telemarketer for "Youngevity and DAC." (*Id.* ¶ 34.)

According to the Complaint, the call originated from the telephone number 1-800-712-0830. (*Id.* ¶ 49.) Canary does not allege that he personally followed up on the March 15 voicemail in any way. Instead, he alleges in the abstract that "[c]alling 1-800-712-0830 directs the caller to the website

Youngevity Motion To Dismiss And To Strike Class Allegations

Case No. 5:18-cv-03261-EJD

www.myvipfunding.com," and that this website in turn prompts visitors to complete an application for David Allen Capital funding." (*Id.* ¶ 49.) Upon submitting such application, the Complaint continues, an individual would receive an email with the "DAC Funding Prequalification" notification advising, among other things, that "[t]he DAC client support specialist assigned to your account is Wade Cordell." (*Id.* ¶ 50.) Again in the abstract, the Complaint alleges that a potential customer would be eventually directed to a DAC distributor who would attempt to match the customer with a small business loan lender. (*Id.* ¶¶ 50-51.) Canary does not allege that he applied for any loan with DAC or Youngevity.

*Youngevity's Advertising Approval & Training.* Canary alleges that Youngevity's advertising policy requires distributors—including those who offer small business loans through DAC—to seek Youngevity's approval of the advertising materials prior to use. (Compl. ¶¶ 3, 30, 70, 73.) The Complaint expressly quotes from the Youngevity Distributor Advertising Approval Process and Approval Application (the "Advertising Approval Application"). (Compl. ¶ 73.) The Application lists "Text Message Solicitations" and "Phone Scripts" as advertising materials that must be preapproved before use, but notably does not mention autodialed calls, or prerecorded or artificial messages. (*Id.*)

In addition, Canary asserts that Youngevity and/or DAC gives advice and training on how to generate leads and best reach potential customers. (*Id.* ¶¶ 4, 32, 47-48, 67, 69.) He alleges that Cordell and David Rutz, Youngevity's Vice President of Global Services, prepared a "DAC/Youngevity" training session where they gave a "voice to text script" to promote "loans marketed by Youngevity through DAC." (*Id.* ¶ 32.) The Complaint does not offer any further details about this alleged training.

*Canary's Class Allegations.* The Complaint contains two counts: Count I alleging a negligent violation of the TCPA, and Count II alleging a willful or knowing violation. The second count is based on Canary's assertion that Youngevity used a prerecorded message, which, according to Canary, suggests that Youngevity intended to make other calls to sell its products and services. (*Id.* ¶ 134.)

Plaintiff purports to bring this putative class action on behalf of the following putative class:

All persons within the United States who received a non-emergency telephone call from Youngevity, a Youngevity sales agent, or a Youngevity company/division to a cellular telephone through the use of an autodialer and/or voice message that had been recorded ahead of time, which was made for the purpose of soliciting the sale of products or services. (Compl. ¶ 107.)

1

## MOTION TO DISMISS AND MOTION TO STRIKE STANDARDS

2

*Motion to Dismiss (Fed. R. Civ. P. 12(b)(6)).* To avoid dismissal for failure to state a claim

3 under Fed. R. Civ. P. 12(b)(6), a complaint must set forth facts that raise a "plausible inference" that the

4 defendant inflicted a legally cognizable harm upon the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 682

5 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (a court must disregard

6 "formulaic recitation of the elements of a cause of action"). Plausibility requires "more than a sheer

7 possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. The factual allegations in the

8 complaint must be sufficient "to raise a right to relief above the speculative level" such that the claim is

9 "plausible on its face." *Twombly*, 550 U.S. at 555, 570. The court need not accept as true unreasonable

10 inferences, unwarranted deductions of fact, or conclusory allegations cast in the form of factual

11 allegations. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Where a complaint

12 pleads facts that are merely consistent with a defendant's liability, it stops short of the line between

13 possibility and plausibility of entitlement to relief. *Somers v. Apple, Inc.*, 729 F.3d 953, 959-60 (9th Cir.

14 2013).

15

*Motion to Strike (Fed. R. Civ. P. 12(f)).* Under Fed. R. Civ. P. 12(f), the Court "may order

16 stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or

17 scandalous matter." A defendant may move to strike class actions prior to discovery where the

18 complaint demonstrates a class action cannot be maintained on the facts alleged therein. *Sanders v.

19 Apple, Inc.*, 672 F. Supp.2d 978, 990 (N.D. Cal. 2009). The court may order class allegations stricken

20 where they are overbroad, particularly where doing so is necessary "to protect [d]efendants from

21 burdensome and unnecessary class discovery on barred claims and individuals." *Enoh v. Hewlett

22 Packard Enter. Co.*, No. 17-CV-04212-BLF, 2018 WL 3377547, at *15 (N.D. Cal. July 11, 2018);

23 *Sidney–Vinstein v. A.H. Robins Co., Inc.,* 697 F.2d 880, 885 (9th Cir. 1983) (Rule 12(f) is a vehicle by

24 which to "avoid the expenditure of time and money that must arise from litigating spurious issues by

25 dispensing with those issues prior to trial").

26

## ARGUMENT

27 ## I.    CANARY FAILS TO STATE DIRECT LIABILITY CLAIM AGAINST YOUNGEVITY.

28

The TCPA makes it unlawful for any person in the United States to "make any call (other than a

call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). The plain language of the statute assigns civil liability only to the party who "makes" a call. *Thomas*, 879 F. Supp. 2d at 1084. It is unclear whether Canary intends to pursue a direct liability claim against Youngevity, as his Complaint is predicated mostly on the principles of vicarious liability. If Canary intends to pursue a direct claim, Canary's Complaint fails to state such a claim against Youngevity itself.

## A.   Canary's Complaint Fails To Allege That Youngevity Placed The Call At Issue, Or That It Was Placed Directly On Youngevity's Behalf.

Canary's Complaint does not contain any allegations as to who placed the March 15 call. Canary merely alleges that the speaker in the prerecorded voicemail at issue introduced himself as "Renee" with "David Allen Capital." (Compl. ¶ 44.) But the Complaint completely fails to answer a separate question of who dialed Canary's number (as opposed to prerecorded the message).

In discussing principles of actual authority, the Complaint assumes, without any explanation, that, despite the caller identifying himself as "Renee," a person named Wade Cordell both prerecorded the voicemail and placed the call to Canary. (Compl. ¶¶ 85-89.)  Canary himself candidly acknowledges that he does not know who made the call. (Compl. ¶ 38 (discussing Canary's "belief" as to who made the call).) Because Canary does not identify the caller as Youngevity, Canary's direct claim fails.

## B.   Youngevity Is Not Liable For Actions Of DAC, A Separate Corporate Entity.

Even if the Court were to infer that someone affiliated with DAC made the call, Youngevity is still not directly liable for the call. Canary attempts to paint a close connection between DAC and Youngevity by referring to DAC as a "Youngevity division," a "commercial loan service [Youngevity] uses to connect consumers with small business loans," "Youngevity's service arm," and a company "under the Youngevity umbrella." (*Id*. ¶¶ 2-3, 13, 33, 78, 98-99.) Creative labels aside, however, Canary does not allege that DAC is the same corporate entity as Youngevity (or that it is, for example, just another name for Youngevity). Instead, Canary acknowledges, as he must, that David Allen Capital, Inc. is a separate corporate entity from Defendant Youngevity International, Inc. (*Id.* ¶¶ 1-2.)

DAC is, indeed, a separate corporation registered under the laws of Michigan and headquartered

in Michigan. (Declaration of Robert H. Griffith, Exhibits 1 & 2.)[2] Even if DAC is a subsidiary or another affiliate of Youngevity, the "general rule [is that] a parent company is not liable for its subsidiary's actions." *In re Portfolio Recovery Assocs., LLC, Tel. Consumer Prot. Act Litig.*, No. 11MD2295, 2014 WL 223557, at *2 (S.D. Cal. Jan. 8, 2014) (announcing the same rule in a TCPA case).[3] Thus, Youngevity is not directly liable for DAC's alleged TCPA violations.

### C.   Canary Does Not, And Cannot, Allege That The Call Was Made By A Youngevity Employee.

As noted above, in the hopes of establishing a greater connection to Youngevity, Canary asserts that the March 15 call was made by Wade Cordell, "***either*** an employee of Youngevity ***or*** served as a high-level sales agent (effectively a telemarketer) for Youngevity and DAC." (*Id.* ¶ 34 (emphasis added); ¶¶ 44-45.) Canary's allegations as to Cordell's employment status are entirely speculative.

At the outset, Canary's suspicion that Cordell was the caller lacks facial plausibility. The speaker in the voicemail introduced himself as "Renee" with DAC, and Canary does not offer any facts to justify his peculiar suspicion that Renee was merely a pseudonym and the speaker in the prerecorded message was actually Wade Cordell.[4]

Further, Canary's allegation regarding Cordell being an employee of Youngevity is made in the alternative, with Canary alleging that Cordell is "either an employee of Youngevity or served as a high-level sales agent (effectively a telemarketer) for Youngevity and DAC." (*Id.* ¶ 34.) Pursuant to Canary's

---

[2] The Court can and should take judicial notice of the Articles of Incorporation filed by DAC with the State of Michigan, and DAC's current standing with the State of Michigan. *eBay Inc. v. Digital Point Sols., Inc.*, 608 F. Supp. 2d 1156, 1164 (N.D. Cal. 2009); *Rhodes v. Sutter Health*, No. CIV. 2:12-0013 WBS, 2012 WL 662462, at *3 (E.D. Cal. Feb. 28, 2012).

[3] The one exception to this principle, of course, is the concept of *alter ego* liability. In order to be liable under the *alter ego* theory, the parent must control the subsidiary "to such a degree as to render the latter the mere instrumentality of the former." *Panacci v. A1 Solar Power, Inc.*, No. 15-CV-00532, 2015 WL 3750112, at *7 (N.D. Cal. June 15, 2015). Canary does not plead this theory, address any of its required elements, or include any facts supporting each element. For example, Canary does not allege that Youngevity treated the assets of DAC as its own, commingled its funds with DAC's, that it controlled DAC's finances, or that DAC was undercapitalized or the separateness of DAC ceased. *Wady v. Provident Life & Accident Ins. Co. of America*, 216 F. Supp. 2d 1060, 1067 (C.D. Cal. 2002) (rejecting *alter ego* theory where the complaint failed to plead facts to satisfy these factors). Further, Canary is not suing DAC, which would have been a necessary party in any lawsuit alleging *alter ego* liability. *Wilson v. Metals USA, Inc.*, No. CIV. S-12-0568, 2012 WL 5932990, at *6 (E.D. Cal. Nov. 27, 2012).

[4] Although not relevant for purposes of this Motion, the call at issue was neither made nor prerecorded by Wade Cordell. Nor was it prerecorded or placed by any employee of DAC or Youngevity.

allegations, then, Cordell may have been simply a distributor for DAC, or he could have been Youngevity's employee. Because neither of these allegations is any more plausible than the other (or, if anything, the former one is more likely than the latter), neither of these allegations meets the *Iqbal* standard, and both must be disregarded. *Elf-Man, LLC v. Cariveau*, No. C13-0507, 2014 WL 202096, at *2 (W.D. Wash. Jan. 17, 2014) (rejecting in-the-alternative allegations as conclusory and insufficient).

The allegation that Cordell is an employee of Youngevity also lacks any factual support. Canary has already alleged that the call was made "on behalf of" DAC. (Compl. ¶ 2.) The only specific facts alleged about Cordell in the Complaint are that he is described as "[t]he DAC client support specialist" in the email someone received in response to a loan inquiry on the www.myvipfunding.com website; that he participated in an unspecified training video to market loans "by Youngevity **through DAC**"; that someone alleged to be DAC's founder thanked Cordell for "helping to create the buzz" around unspecified "Youngevity services"; that Cordell sold his own company to Youngevity in 2014; and that his wife is the "Vice Chairwoman" of Youngevity. (*Id.* ¶¶ 23, 32, 46-48, 50-51.) None of these allegations is suggestive of Cordell being an employee of Youngevity. *Somers*, 729 F.3d at 960 (holding that it is not enough that the complaint is "factually neutral"; rather, it must be "factually suggestive"). They are just as compatible with his status as DAC's distributor. Indeed, conceding the utter absence of any facts to suggest that Cordell was Youngevity's employee, Canary focuses almost exclusively on the theory of vicarious liability.  (*Id.* ¶¶ 28, 79-104.) In sum, the Court must disregard the conclusory "either-or" assertion regarding Cordell being Youngevity's employee.

## II.   CANARY FAILS TO STATE A CLAIM FOR VICARIOUS LIABILITY AGAINST YOUNGEVITY.

The Ninth Circuit has held that, in certain limited circumstances, the TCPA permits imposition of vicarious liability based on federal common law of agency. *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018) (citing *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6586-87, ¶¶ 33-35 (2013)). There are three agency relationships that may give rise to vicarious liability under federal law: formal agency/actual authority, apparent authority, and ratification. *Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679 (9th Cir. 2014). Canary does not allege sufficient facts—as opposed to conclusions—to satisfy any of these principles.

**A.      Canary Fails To Plead Sufficient Facts To Allege Formal Agency/Actual Authority.**

In the Ninth Circuit, formal agency is limited to "actions specifically mentioned to be done in a written or oral communication or consistent with a principal's 'general statement of what the agent is supposed to do.'" *Jones*, 887 F.3d at 449 (citation and quotation marks omitted). In order to establish agency liability under the TCPA, plaintiffs "must do more than establish an agency relationship. They must also establish actual authority to place the unlawful calls." *Id.*

"Agency is not established when control may be exercised only as to the result of the work and not the means by which it is accomplished; in such a case an independent contractor relationship exists." *Henderson v. United Student Aid Funds, Inc.*, No. 13CV1845, 2017 WL 766548, at *6 (S.D. Cal. Feb. 28, 2017) (citation and alterations omitted). In order to establish actual authority, the principal has to control the manner and means, rather than the results, of the text message campaign. *Thomas,* 879 F. Supp. 2d at 1085. "Agency means more than mere passive permission; it involves request, instruction, or command." *Linlor v. Five9, Inc.*, No. 17CV218, 2017 WL 5885671, at *3 (S.D. Cal. Nov. 29, 2017).

Complaint fails to allege *any facts* to suggest that Youngevity authorized the call at issue or exercised control over the manner and means by which Canary received the call. Instead, Canary relies on an assortment of conclusory allegations in an effort to hold together his deficient Complaint. (*See, e.g.*, Compl. ¶¶ 3, 23, 30-31, 34, 60, 70-72, 81-82.) Stripped of the deceptive labels and conclusory allegations of "agency," the facts as pled in the Complaint are woefully inadequate.

**1.      <u>Canary Does Not Allege That Youngevity Authorized The Call, And Youngevity In Fact Prohibits Any Advertising On Its Behalf In Violation Of The TCPA.</u>**

Canary has not, and cannot, plead any facts to suggest that Youngevity authorized Cordell, Renee, or any of its distributors to place the call at issue. Indeed, just the opposite is true. Youngevity's Advertising Approval Application expressly requires distributors to comply with "any . . . applicable statutes, State, Local, or Federal laws," including the TCPA. (*See* Declaration of Steve Wallach ("Wallach Decl."), ¶ 4 & Exhibit 1.) Youngevity's Advertising Approval Application also expressly quotes from and cross-references Youngevity's Policies & Procedures (the "Policies"). (Wallach Decl., ¶ 5 & Exhibit 2.) The Policies prohibit distributors from engaging in any unlawful activities, state that Youngevity will not defend or hold harmless any distributor using non-approved advertising, and

indicate that "*[c]omplete compliance with [any local, state, or federal statutes] is not only expected, it is necessary to avoid violation of federal law*." (*Id.* ¶ I.3 (emphasis added); *see also* ¶ E.9.) Youngevity's Advertising Approval Application further requires that distributors not use any materials with Youngevity's names, programs, products, or logos "except those that are pre-approved and obtained directly from [Youngevity]." (Wallach Decl., Ex. 1.) Given that Youngevity expressly prohibited all of its distributors from employing marketing tools that would violate the law, the formal agency and actual authority theory must be rejected. *Jones*, 887 F.3d at 450 (where company policy prohibited calls in violation of the law, actual authority cannot be established); *Makaron v. GE Sec. Mfg., Inc.,* No. CV–14–1274–GW AGRX, 2015 WL 3526253, at *6 (C.D. Cal. May 18, 2015) (actual authority not established where defendant had contract with violators requiring laws to be followed).

The Court can consider both Youngevity's Advertising Approval Application and Youngevity's Policies without converting Youngevity's Motion into one for summary judgment. As the Ninth Circuit explained, "courts may take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Davis v. HSBC Bank Nevada, N.A*., 691 F.3d 1152, 1160 (9th Cir. 2012); *see also Figueroa v. Law Offices of Patenaude & Felix, A.P.C*., No. EDCV14325, 2014 WL 12597118, at *2 (C.D. Cal. May 30, 2014) (the court may consider documents that, while not attached to the complaint, are incorporated by reference in the complaint, or documents that are integral to the complaint, even if they are not explicitly incorporated by reference). There is no question that Canary extensively relies on and even direct-quotes from the Adverting Approval Application throughout his Complaint. (Compl. ¶¶ 3, 29, 30, 33, 60, 70-73, 76.) Canary also clearly relies on and references Youngevity's Policies, including specific policies related to advertisement, use of company logo, payment of commissions, and the distributors' status with Youngevity. (*See, e.g.*, Compl. ¶¶ 3, 5, 13, 30, 33, 59, 66-67, 70, 72, 76, 94, 98.) The Policies outline the terms of Youngevity's relationship with distributors and are critical to Canary's claims. Having based his allegations on the contents of the Advertising Approval Application and the Policies, Canary can "hardly complain when [Youngevity] refer[s] to the same information in [its] defense. *In re Silicon Graphics Inc. Sec. Litig*., 183 F.3d 970, 986 (9th Cir. 1999). Accordingly, both documents form the basis for Canary's claims, are incorporated in his Complaint, are integral to his Complaint, and can

be considered in connection with his Motion.[5]

### 2.   Canary Does Not Sufficiently Allege Youngevity's Control Over The Entity Making The Call At Issue.

Canary makes much ado about the fact that Youngevity requires pre-approval of advertising materials. (Compl. ¶¶ 70-73.) While Youngevity does require pre-approval of its distributors' own advertising, it does not follow that such pre-approval was sought or obtained from Youngevity here, and there are no facts alleged to support such an inference. Indeed, the Advertising Approval Application emphasizes that Youngevity only rarely approves distributors' own advertisements, and reviews any such requests carefully:

> Youngevity goes to a great deal of time, energy, and expense to make sure that our Distributors have professional advertising materials available to them, and that said advertising is up to date, compliant, and will not place the Distributor in a situation where he/she violates company policies or federal, state, and or local statutes. It is important to realize that not only do we live in a litigious society, but we are in a highly regulated and monitored industry. For obvious reasons, Youngevity *is reticent to approve any Distributor generated advertising*. (Wallach Decl., Ex. 1 (emphasis added).)

Youngevity's Policies state that any advertising that is not made available directly by the company is considered "non-approved, non-compliant advertising." (Wallach Decl., Ex. 2, § I.4.) Moreover, even if the material had been approved, it does not mean that Youngevity authorized calls to be made in violation of its own marketing policies set forth above.  In fact, Canary does not, and cannot, even allege that the caller submitted the voicemail at issue for Youngevity's approval.

Although Canary asserts, "[u]pon information and belief," that "Youngevity either provided its agents permission to perform the telemarketing that is the subject of this lawsuit" or "[a]lternatively, . . . willfully looked the other way" (Compl. ¶ 82), the "upon information and belief" pleading cannot be used as a license to outright speculate. Canary cannot rest his claim "upon information and belief"; he

---

[5] *Int'l Audiotext Network v. Am. Tel. & Tel. Co*., 62 F.3d 69, 72 (2d Cir. 1995) (considering agreement that was not specifically referenced in the complaint because the complaint "relies heavily upon its terms and effect" such that the agreement is "integral" to the complaint); *Delgado v. United Facilities, Inc*., No. 2:11-CV-00485, 2012 WL 10717266, at *4 (E.D. Cal. Feb. 21, 2012) (allowing consideration of the termination letter that is integral to plaintiff's claim that she was "terminated," even though the letter was not expressly referenced in the complaint); *Roe v. Unocal Corp*., 70 F. Supp. 2d 1073, 1075 (C.D. Cal. 1999) ("[E]ven if a document is neither submitted with the complaint nor explicitly referred to in the complaint, the . . . court may consider the document in ruling on a motion to dismiss so long as the complaint necessarily relies on the document. . . .").

must provide facts that "raise a right to relief above the speculative level."[6] Moreover, Canary does not explain what aspect of "telemarketing that is the subject of this lawsuit" Youngevity allegedly "permi[tted]" (autodialed calls, prerecorded messages, this particular script, or this particular call) and whether this permission was made with the knowledge of all relevant facts.

Even if Youngevity "permitted" the "telemarketing" (Compl. ¶ 82), Canary's Complaint decidedly does not allege that Youngevity dictated to its distributors (let alone to the caller at issue) "when, where, and how many people to call." *Jones v. All Am. Auto Prot., Inc.*, No. 314CV00199LRHWGC, 2015 WL 7566685, at *4 (D. Nev. Nov. 24, 2015), *aff'd sub nom., Jones*, 887 F.3d at 451-52. It is well established in the Ninth Circuit that "knowledge, approval, and fund administration [for a text messaging campaign] do not amount to controlling the manner and means of the . . . campaign."[7] In a recent decision squarely on point, the Ninth Circuit rejected a vicarious liability claim even though the alleged principal required the scripts and advertising materials to be pre-approved in accordance with company guidelines. *Jones*, 887 F.3d at 451. The court explained that the defendant still did not control the methods and means of the telemarketer's operations, particularly where it required that the telemarketers comply with the law and did "not have the right to control the hours the telemarketers worked nor did it set quotas for the number of calls or sales [they] had to make." *Id.*

The same is true here. Canary does not, and cannot, allege that the call at issue was placed at the request or direction of Youngevity. *United States v. Bonds*, 608 F.3d 495, 507 (9th Cir. 2010) (no agency found where the testing was performed on the alleged agent's own initiative and not at the request of the alleged principal). Canary fails to "allege facts showing that [Youngevity] had the right to

---

[6] *Price v. Town of Dewey-Humboldt*, No. CV-12-8086, 2012 WL 2415206, at *2 (D. Ariz. June 26, 2012) (refusing to credit allegation made "upon information and belief" where it was not supported by any facts); *Olive v. Gen. Nutrition Centers, Inc.*, No. 2:12-CV-04297-ODW, 2012 WL 2006389, at *2 (C.D. Cal. June 5, 2012) (refusing to credit "upon information and belief" allegations with regard to amount in controversy); *see also Elan Microelectronics Corp. v. Apple, Inc.*, No. C 09-01531 RS, 2009 WL 2972374, at *4 (N.D. Cal. Sept. 14, 2009) ("regardless of what knowledge may lie exclusively in the possession of [defendant], [plaintiff] should be able to articulate at least some facts as to why it is reasonable to believe" defendant is liable).

[7] *Thomas*, 879 F. Supp. 2d at 1086 (although Taco Bell knew of the campaign, approved it via its minority vote, and funded the campaign, agency did not exist as these facts did not establish that Taco Bell controlled the campaign); *see also Naiman v. TranzVia LLC*, No. 17-CV-4813, 2017 WL 5992123, at *10–11 (N.D. Cal. Dec. 4, 2017) (granting a motion to dismiss because, even though the parties allegedly agreed on the volume of calling and the number of leads per day, that did not amount to control over how the leads generator would obtain those leads).

Youngevity Motion To Dismiss And To Strike Class Allegations

-13-                    Case No. 5:18-cv-03261-EJD

control [the caller] and the manner and means of the calls [the caller] made." *Naiman*, 2017 WL 5992123, at \*10–11 (granting motion to dismiss vicarious liability claim in a TCPA case). Without such alleged facts, Canary's vicarious liability claim cannot proceed any further.

### 3.   Youngevity Makes Clear That Its Distributors Are Independent Contractors And That Youngevity Does Not "Dictate Their Selling Methods."

While the Complaint is unclear on the exact status of Youngevity's distributors, Youngevity's Policies make clear that its distributors are "independent contractors and are not: franchisees, partners, joint venturers, employees or agents of the Company . . . [and] must not imply or represent employment *or agency relationships* in any manner." (Wallach Decl., Ex. 2, ¶ D.1 (emphasis added).) And even though the distributors are prohibited from making calls on Youngevity's behalf in violation of the TCPA, "the Company *does not dictate selling methods, specific hours, or effort levels*" of distributors. (*Id.* ¶ D.3 (emphasis added).) Youngevity also "imposes no restrictions on any Distributor's participation or sales activities in other businesses or programs other than Youngevity." (*Id.* ¶ E.6.)

Given Youngevity distributors' independent contractor status, set forth in the very documents upon which Canary relies, Canary fails to plead actual authority. Generally, an individual acting as an independent contractor does not have the traditional agency relationship with the principal necessary for vicarious liability. *See Bonds*, 608 F.3d at 505-06; *Jones*, 866 F.3d at 1105. The allegations in the Complaint do nothing to alter that result here and they are therefore insufficient to state a claim of actual authority. *Makaron*, 2015 WL 3526253, at \*7 (no actual authority between the company and its third-party distributors and authorized dealers where authorized dealers were independent contractors); *Naiman*, 2017 WL 5992123, at \*11 (no actual authority, particularly where the agreement stated that the lead generator would have "sole and complete discretion as to the messages it transmits in order to obtain potential lead data").

### 4.   Canary's Remaining Allegations Regarding Youngevity's Business Practices Are Insufficient To State A Vicarious Liability Claim.

Canary's remaining allegations regarding Youngevity's "model" are similarly deficient. For example, Canary alleges that Youngevity provides weekly training and "encourages its distributors to employ phone calls and text messages as a means of marketing its products." (Compl. ¶ 29, 32-33, 47-48, 62-63, 67.) Canary also references an unspecified "voice to text" script allegedly created by Cordell

Youngevity Motion To Dismiss And To Strike Class Allegations
-14-                                    Case No. 5:18-cv-03261-EJD

and DAC's founder David Rutz to "move loans." (Compl. ¶ 48.) And Canary additionally alleges that Rutz encouraged distributors to engage in cold calling. (*Id.*)

None of this demonstrates that Youngevity was promoting the type of call at issue here. All of the items noted above can be done in legal fashion. Once again, Youngevity precludes its distributors from marketing on Youngevity's behalf in ways that violate the TCPA. Moreover, these allegations do not come close to alleging Youngevity's control over the manner and means of its distributors' phone outreach efforts. Canary does not, and cannot, allege that Youngevity required or dictated that distributors engage in particular calling methods. Nor does Canary allege that Youngevity's training sessions encouraged the use of particular calling techniques or equipment. In sum, the allegations regarding Youngevity's "training" do not evidence, and are not even probative of, Youngevity's control of the manner and means in which the call at issue was placed.[8]

Even if Youngevity knew of the alleged use of the autodialer or prerecorded or automated messages, "the knowledge that an agent is engaged in an otherwise commonplace marketing activity is not the sort of red flag that would lead a reasonable person to investigate whether the agent was engaging in unlawful activities."[9] Canary does not, for example, allege that Youngevity provided its distributors with numbers to contact, knowing that the numbers were not scrubbed for compliance with the Do-Not-Call list, or that these individuals did not consent to telemarketing calls. In sum, Canary has

---

[8] To the extent Canary alleges that Youngevity "knew the method and content its agents and employees, including Wade Cordell, used to advertise DAC loans and other services" (Compl. ¶ 74), these allegations are improperly pled. Canary's pleading in the alternative that Youngevity "knew" or "should have known" that its distributors allegedly used autodialed and prerecorded calls confirms that Canary has no facts to suggest actual knowledge, and is not valid as to either scenario. *Elf-Man, LLC*, 2014 WL 202096, at *2 (rejecting in-the-alternative allegations as conclusory and insufficient); *Cobbler Nevada, LLC v. Gonzales*, No. 3:15-CV-00866-SB, 2016 WL 3392368, at *3 (D. Or. June 8, 2016) (claim for infringement not adequately stated where the complaint alleges several possibilities as to a potential culprit). In addition, mere knowledge or approval of the calls, which could have been placed in a legal fashion, is not sufficient to show control over the means and methods of the alleged calling campaign. *Thomas*, 879 F. Supp. 2d at 1086.

[9] *Kristensen*, 879 F.3d at 1015; *see also Kristensen v. Credit Payment Servs. Inc.*, No. 2:12-CV-00528, 2015 WL 4477425, at *3 (D. Nev. July 20, 2015) (although defendant may have known that the alleged agent used texts to generate the leads, the evidence was not sufficient to show defendant's control over means of transmission or methods used by the agent to carry out its text messaging campaign); *Meyer v. Capital All. Grp.*, No. 15-CV-2405, 2017 WL 5138316, at *11 (S.D. Cal. Nov. 6, 2017) (where defendant hired third-party vendors to send faxes and make telemarketing calls, plaintiff did not establish the requisite control over the methods and means vendors employed to accomplish these tasks).

1    not pled sufficient facts to suggest that Youngevity knew of, condoned, or required or authorized any

2    activity prohibited by the TCPA.[10]

3         Next, Canary alleges that "Youngevity, through DAC, . . . directs its services sales agents to

4    websites that make available 1-800 numbers with prerecorded messaging tools." (Compl. ¶ 4.) When

5    carefully reviewed, however, this statement does not actually allege that Youngevity provided any toll-

6    free number to the DAC distributor who placed the call to Canary. And even if Youngevity did provide

7    the 1-800 number to the caller (and the Complaint does not allege so), that still does not mean that any

8    resulting calls would violate the TCPA and would not be sufficient to adequately allege control over the

9    manner or means of the calls. *See Linlor v. Five9, Inc*., No. 17CV218, 2017 WL 2972447, at *3 (S.D.

10   Cal. July 12, 2017) (granting motion to dismiss vicarious liability allegations where defendant "sold

11   software to the entity responsible for sending the messages, and provided the entity with a toll free

12   number with which to receive responses to the messages").

13        Finally, Canary asserts that Youngevity's distributors "had the authority to use [Youngevity's]

14   trade name, trademark and service mark," with Youngevity's approval. (Compl. ¶ 33.) Of course, the

15   speaker in Canary's voicemail did not reference Youngevity or offer Youngevity's product. (Compl. ¶

16   44.) Even if he did, that is, again, entirely insufficient to allege Youngevity's control over the speaker's

17   method and means of telemarketing. *See, e.g.*, *Abante Rooter & Plumbing v. Farmers Grp., Inc*., No. 17-

18   CV-03315, 2018 WL 288055, at *5 (N.D. Cal. Jan. 4, 2018) (the use of defendant's mark and trade

19   name is not enough to allow the court to infer that defendant exercised control); *Makaron v. GE Sec.*

20   *Mfg., Inc*., No. CV-14-1274, 2015 WL 3526253, at *6 (C.D. Cal. May 18, 2015) (defendant's licensing

21   of the use of its trademark to its authorized dealers is not sufficient to establish agency).

22

23

24   _____

25   [10] Canary alleges, in a conclusory fashion, that Youngevity knew or must have known that it was "violating the TCPA either directly or through its sales agents." (Compl. ¶ 35.) Canary bases this allegation on his assertion (itself conclusory) that Cordell prerecorded the voicemail to Canary. (*Id.* ¶

26   34.) But this conclusion is a *non sequitur*. Even assuming Youngevity knew or approved of the contents of the recording, or knew it was prerecorded, this fact does not necessarily mean that Youngevity also

27   knew that Cordell would be violating the TCPA when placing his calls. The Complaint does not allege that Youngevity knew how Cordell obtained Canary's number, whether that number was on the Do-Not-

28   Call list, and whether he had sufficient consent to contact Canary—all facts necessary for Youngevity to be able to evaluate Cordell's compliance with the TCPA.

                                    Youngevity Motion To Dismiss And To Strike Class Allegations

**5.** **Canary's Allegations Regarding Wade Cordell Fail To Support The Inference That Cordell Was Youngevity's Agent.**

Canary attempts to pin the call on Wade Cordell, and strains to tie Cordell to Youngevity. As explained in the discussion above, *see supra* at Part I.A, Canary does not allege any facts to support his assertion that it was Cordell who dialed Canary's number on March 15. But even indulging Canary's theory for a minute, the Complaint falls short of alleging that Cordell was Youngevity's agent.

As explained above, *see supra* Part I.C, Cordell is not alleged to be Youngevity's employee. Canary nevertheless makes a number of conclusory and irrelevant assertions related to Cordell, including that:

- Cordell is a "high-level sales agent (effectively a telemarketer) for Youngevity and DAC";
- Cordell "has been affiliated with Youngevity since his herbal supplement company . . . was acquired by Youngevity in 2014";
- Cordell's wife is a "Vice Chairwoman" of Youngevity;
- Cordell created a "voice to text" script "to 'move' loans marketed by Youngevity through DAC";
- Cordell worked as the "DAC client support specialist" to get potential customers to fill out a loan prequalification form at which point Youngevity would "take over"; and
- David Rutz, the founder of DAC and purported "Vice President of Global Services" at Youngevity, thanked Cordell, as well as other Youngevity employees and agents, "generally for 'helping to create the buzz' around 'Youngevity services.'" (*Id.* ¶¶ 32, 34, 45, 46, 48, 50.)

These statements create the smoke-screen of purported collaboration between Cordell and DAC or Youngevity, but are decidedly insufficient to show Youngevity's control over the method and means of Cordell's promotional activities. Whatever Cordell's alleged "affiliation" with Youngevity was by virtue of having sold an unrelated company to Youngevity years ago (or because his wife purportedly has a role in the company), the Complaint alleges no facts to suggest that Youngevity exercised control over the means and methods by which Cordell allegedly reached out to Canary. Again, nothing suggests that Youngevity set particular requirements for Cordell to follow as to the number of calls, hours of operation, type of equipment to use, the content of his conversations or prerecorded messages, or provided or dictated the tools or instrumentalities for Cordell's alleged outreach. There is no suggestion that David Rutz had a right to control the results, let alone the methods and means of Cordell's work. Canary's allegations *vis-à-vis* Cordell—which impermissibly lump DAC and Youngevity together—fall markedly below the plausibility threshold. *Employee Painters' Tr. v. McIntosh Mirror Door & Glass*

*Inc.,* No. C13-0108, 2013 WL 2897970, at *2 (W.D. Wash. June 13, 2013) (finding that under the *Iqbal* standard, it is not enough that a claim be merely "possible" or "conceivable"; instead, it must be "plausible on its face"); *Esoimeme v. Wells Fargo Bank*, No. CIV S-10-2259, 2011 WL 3875881, *15 (E.D. Cal. Sept. 1, 2011) (pleading fails Rule 12(b)(6) threshold where plaintiff lumps all of the defendants together and does not offer any specific factual allegations).

### B.   Canary Fails To State A Claim Of Apparent Authority.

Canary's allegations with respect to apparent authority are equally deficient. "Apparent authority holds a principal accountable for the results of ***third-party beliefs about an actor's authority to act as an agent*** when that belief is reasonable and is traceable to a manifestation of the principal." *Naiman*, 2017 WL 5992123, at *12 (citing Restatement (Third) of Agency § 2.03) (emphasis added). The ostensible authority of an agent cannot be based solely upon the agent's conduct. *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). It "can only be established by proof of something said or done by the [alleged principal], on which [plaintiff] reasonably relied," "to [plaintiff's] detriment." *Thomas*, 582 F. App'x at 679-80 (citing *NLRB v. Dist. Council of Iron Workers of Cal. & Vicinity*, 124 F.3d 1094, 1099 (9th Cir. 1997)); *Murphy v. Fullbright*, No. 12-CV-885, 2012 WL 4754730, at *4 (S.D. Cal. Oct. 4, 2012) ("The power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and belief is traceable to the principal's manifestation.") (citation omitted).

Here, Canary plainly does not allege that he relied to his detriment on anything that Youngevity did or said with respect to Cordell or any other distributor's authority. The call does not even mention Youngevity, and Canary does not allege that he even knew or heard of Youngevity when he received the voicemail at issue, such that Canary could reasonably believe that the speaker acted on its behalf. Canary concedes the speaker introduced himself as "Renee" with "David Allen Capital." (Compl. ¶ 44.) Canary does not allege that he called "Renee" back, went to the website provided at that number (again, not alleged to be affiliated with Youngevity), filled out or submitted any form or application (again, without any reference to Youngevity), applied for a loan, or did anything else to follow up on the outreach.

Finally, Canary alleges that Youngevity enters into agreements with its distributors that grant them the authority to sell products and services marketed by Youngevity/DAC. (Compl. ¶ 98.) But the Complaint lacks a critical assertion that Canary saw or was aware of these agreements, so as to reasonably rely on them. The same is true of the assertion that, according to Rutz, DAC is a "division" of Youngevity, and "agents of Youngevity are agents of DAC and vice versa." (Compl. ¶ 99.) Canary does not allege that he heard of this alleged representation by Rutz, knew that Rutz was (allegedly) "Youngevity's VP of Global Services," or otherwise reasonably relied on anything Youngevity did to conclude that the speaker "Renee" was, indeed, Youngevity's agent. "[A]pparent authority exists only with regard to those who believe and have reason to believe that there is authority; there can be no apparent authority created by an undisclosed principal." Restatement (Second) of Agency § 8 (1958). Because the Complaint fails to allege Canary's reasonable reliance on anything Youngevity said or did, the apparent authority claim must fail. *Thomas*, 582 F. App'x at 679-80 (dismissing complaint where plaintiff has not alleged that she "reasonably relied, much less to her detriment, on any apparent authority with which [the alleged principal] allegedly cloaked [the alleged agent]); *Linlor v. Five9, Inc*., 2017 WL 5885671, at *3 (apparent authority claim dismissed where plaintiff failed to allege that "he relied to his detriment on something [alleged principal] did or said with respect to [alleged agent's] authority to send the text messages).

## C.    Canary Fails To Plead Facts To Allege Ratification.

Canary's Complaint also fails to allege ratification. "Although a principal is liable when it ratifies an originally unauthorized tort, the principal-agent relationship is still a requisite, and ratification can have no meaning without it." *Thomas*, 582 F. App'x at 680 (quoting *Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2003)). The doctrine of ratification is not available unless the actor acted or purported to act as an agent on the person's behalf. *Kristensen*, 879 F.3d at 1014; *see also Henderson*, 2017 WL 766548, at *8. As explained above, *see supra* at Part II.A, Canary failed to plead any facts to establish actual agency, and this deficiency is also fatal to Canary's claims of ratification.

Likewise, even if a principal ratifies the alleged agent's act, the principal is not bound by a ratification if it is "made without knowledge of material facts about the agent's act unless the principal chose to ratify with awareness that such knowledge was lacking." *Kristensen*, 879 F.3d at 1014. A

Youngevity Motion To Dismiss And To Strike Class Allegations

principal assumes the risk of lack of knowledge if "the principal is shown to have had knowledge of facts that would have led a reasonable person to investigate further, but the principal ratified without further investigation." *Id.*

Here, Canary pleads no facts to suggest that Youngevity had actual knowledge of either Cordell or another distributor leaving prerecorded messages in alleged violation of the TCPA, or knew of facts that would have led a reasonable person to investigate further. At most, the Complaint alleges that Youngevity either knew or should have known that its distributors generated leads by making calls using an artificial or prerecorded voice or ATDS. (Compl. ¶¶ 101-02.) Even if Youngevity knew that Cordell or others used ATDS or left prerecorded messages—and the Complaint fails to allege this—this would not be the sort of knowledge that would prompt a reasonable person to investigate further. *See, e.g.*, *Naiman*, 2017 WL 5992123, at *10-11 (prior lawsuit alleging similar violation does not demonstrate that defendant must have been aware of the alleged agent's offending conduct). In the Ninth Circuit, "the knowledge that an agent is engaged in an otherwise commonplace marketing activity is not the sort of red flag that would lead a reasonable person to investigate whether the agent was engaging in unlawful activities." *Kristensen*, 879 F.3d at 1015. Canary does not therefore allege requisite knowledge of the relevant facts.

The ratification theory fails for one additional reason: Canary does not, and cannot, allege that the voicemail at issue resulted in any benefit to Youngevity. Canary does not allege that the voicemail resulted in the loan being issued to Canary and Youngevity receiving any commission or other benefit as a result. In sum, the ratification theory must be dismissed as a matter of law. *Arbon Valley Solar LLC v. Thomas & Betts Corp.*, No. 4:16-CV-00070, 2017 WL 5613009, at *6 (D. Idaho Nov. 21, 2017) (dismissing the complaint based on ratification theory where plaintiffs have not alleged that defendant "received, accepted, or retained any benefits from the contract"); *Phan v. Grand Bahama Cruise Line, LLC*, No. 15-CV-05019, 2016 WL 1427648, at *2 (N.D. Cal. Apr. 12, 2016) (dismissing ratification theory where the complaint did not allege any benefit to the defendant from the alleged activity).

### III.   THE COURT MUST DISMISS COUNT II OF THE COMPLAINT ALLEGING KNOWING OR WILLFUL VIOLATION OF THE STATUTE.

The Court should dismiss Count II in Canary's Complaint attempting to assert a knowing or

willful violation of the statute because it is unsupported by any facts. The only purported "fact" Canary offers in support of this Count is that Youngevity allegedly used a prerecorded message and, "upon information and belief," called others besides Canary. (Compl. ¶¶ 134-35.) These allegations are purely speculative. Canary is plainly not aware of a single other call placed to his phone by the same caller, or a single other individual contacted by the same caller. Nor does Canary allege that Youngevity was even aware of the call made to Canary or of the alleged fact that this call was made using an ATDS or via a prerecorded message.

And even if the caller contacted others with the same script, Canary offers no facts indicating that the caller—or, more importantly, Youngevity—knew that he was thereby violating the TCPA, let alone that he violated the statute intentionally. Canary does not, for example, allege that other called parties did not consent to telemarketing outreach. Nor does the Complaint allege that Youngevity knew that Canary's number was registered on the Do-Not-Call list here. For these reasons, the Court should dismiss allegations of willful or knowing TCPA violation. *Ris v. ICollect.com, Corp*., No. 8:16-CV-2414-T-30AAS, 2017 WL 2620545, at *2 (M.D. Fla. June 16, 2017) (refusing to award treble damages where "complaint does not include factual allegations sufficient for the Court to find that Defendant willfully or knowingly violated the TCPA"); *Chen v. Allstate Ins. Co*., No. C 13-0685 PJH, 2013 WL 2558012, at *11 (N.D. Cal. June 10, 2013) (dismissing the cause of action for knowing and/or willful violations of the TCPA).

## IV.   THE COURT SHOULD STRIKE PROPOSED CLASS ALLEGATIONS.

Canary's Complaint proposes to certify the following nationwide class:

> All persons within the United States who received a non-emergency telephone call from Youngevity, a Youngevity sales agent, or a Youngevity company/division to a cellular telephone through the use of an autodialer and/or voice message that had been recorded ahead of time, which was made for the purpose of soliciting the sale of products or services.  (Compl. ¶ 107.)

This definition is massively overbroad and not co-extensive with Canary's own claims. It includes persons well beyond those who, like Canary, allegedly received a message prerecorded by Wade Cordell (or Renee) "on behalf of" DAC offering loans to small business owners. The proposed definition includes calls placed by any Youngevity employee, any Youngevity "sales agent," any

"Youngevity company" or "Youngevity division" relating to the sale of any product or service.

Indeed, this definition would presumably encompass calls related to subjects as wide-ranging as herbal supplements, jewelry, nutritional products, coffee, sports, and weight management products. (Compl. ¶ 54.) The definition is not limited to calls resulting in a prerecorded message (as Canary alleges to have received); it includes any calls made via ATDS without any message. Nor is this definition limited to claims made based on vicarious liability theory only; instead, it includes calls made by Youngevity's own employees. Finally, this definition is not at all limited in temporal scope, virtually ensuring that many of the claims by the putative class members will be time-barred. *Quezada v. Loan Ctr. of California, Inc.*, No. CIV. 2:0800177WBSKJM, 2009 WL 5113506, at *7 (E.D. Cal. Dec. 18, 2009) (finding that plaintiff fails to meet the typicality requirement where many of the class members' claims would be subject to the statute of limitations defense). Courts in the Ninth Circuit routinely strike class allegations that, like here, are overbroad and inconsistent with plaintiff's theory of the case.[11]

Equally problematic, the proposed class definition includes even those who consented to the calls at issue or who are current customers of Youngevity or its affiliates. That potentially means that many of the members of the proposed class authorized the very calls at issue. Courts routinely strike class allegations of this ilk that include members who obviously lack a valid claim against the defendant.[12]

The proposed class definition is also not readily ascertainable. Rule 23 requires that a "defined identifiable class exist." *Olney v. Job.com, Inc.*, No. 1:12-CV-01724-LJO, 2013 WL 5476813, at *11 (E.D. Cal. Sept. 30, 2013). Here, Canary has not proposed a well-defined and ascertainable class. For

---

[11] *See, e.g., Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1044 (N.D. Cal. 2014) (striking class allegations because, "as pled, the class is inconsistent with Plaintiff's theory of the case"); *Castaneda v. Fila USA, Inc.*, No. 11-CV-1033-H BGS, 2011 WL 7719013, at *2 (S.D. Cal. Aug. 10, 2011) (directing proposed class definition to be amended where it contains members not covered by the statute); *Bush v. Vaco Tech. Servs., LLC*, No. 17-CV-05605-BLF, 2018 WL 2047807, at *6 (N.D. Cal. May 2, 2018) (striking class allegations because the complaint "does not plausibly allege claims on behalf of this overbroad class, or that [the named plaintiff] could somehow represent all of them"); *Kas v. Mercedes-Benz USA, LLC*, No. CV 11-1032-VBF(PJWX), 2011 WL 13238744, at *4 (C.D. Cal. Aug. 23, 2011) (striking class definition as overbroad).

[12] *Lyons v. Bank of Am., NA*, No. 11–1232, 2011 WL 6303390, at *7 (N.D. Cal. Dec. 16, 2011); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010) (striking class allegations where the proposed class included individuals who had no problems with the purportedly defective product); *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal.2009) (striking class allegations because the proposed class definition "necessarily includes individuals who did not purchase" the accused product); *Hovsepian v. Apple, Inc.*, No. 08–5788 JF (PVT), 2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) ("First, the class is not ascertainable because it includes members who have not experienced any problems with their iMac display screens.").

example, the terms "Youngevity company/division" or a "Youngevity sales agent" are unclear. Nor is it clear whether a particular call is made "*for the purpose of* soliciting the sale of products or services." Determining whether someone belongs within the class proposed by Canary would thus be "excessively complicated, rather than sufficiently facile" under these circumstances. *Martinez v. Flower Foods, Inc*., No. CV 15-5112 RGK (EX), 2016 WL 10746664, at *7 (C.D. Cal. Feb. 1, 2016), *appeal dismissed sub nom. Martinez v. Flowers Foods, Inc*, 720 F. App'x 415 (9th Cir. 2018) (ascertainability not met where plaintiff has not identified a reliable method of determining the routes taken by different drivers so as to ascertain membership in the proposed class).

Finally, Canary defines the class here in such a way that it requires proof of the underlying elements of the TCPA claim with respect to each person and/or each call, such that potential class members either win on that legal elements or they are not part of the class. In other words, the proposed class consists solely of persons who can establish that defendant violated the TCPA. *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-CV-846, 2014 WL 1814076, at *9 (S.D. Ohio May 7, 2014). When membership in the proposed class is determined by reference to the merits of the putative members' claims, the class is failsafe. *Kamar v. RadioShack Corp*., 375 F. App'x 734, 736 (9th Cir.2010). "Either the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment." *Randleman v. Fid. Nat. Title Ins. Co*., 646 F.3d 347, 352 (6th Cir. 2011). Class allegations must therefore be stricken on this additional basis. *See, e.g.*, *Brazil v. Dell, Inc*., No. 07–1700, 2008 WL 2693629, at *7 (N.D. Cal. July 7, 2008) (striking the class definition where the class was in part defined as all persons to whom the products were "falsely advertised as discounted"); *Boyer v. Diversified Consultants, Inc*., 306 F.R.D. 536, 540 (E.D. Mich. 2015) (striking class allegations where the class consisted of those persons "who did not provide his or her phone number to [defendant] or the creditor as an authorized contact number for the alleged debt on which [defendant] attempted to collect"); *Lindsay Transmission, LLC v. Office Depot, Inc*., No. 4:12-CV-221 CEJ, 2013 WL 275568, at *4 (E.D. Mo. Jan. 24, 2013) (striking similar TCPA class allegations turning on express prior consent and established business relationship).

For these (and other) reasons, Canary will not be able to certify his proposed class. The Court should simply "avoid the expenditure of time and money that must arise from litigating spurious issues

by dispensing with those issues prior to trial." *Sidney–Vinstein,* 697 F.2d at 885.

## **CONCLUSION**

For these reasons, the Court must dismiss Canary's claims in their entirety and, to the extent any of Canary's claims survive (and they should not be allowed to), the Court should strike class allegations in Canary's Complaint.


DATED:  July 30, 2018

**FOLEY & LARDNER LLP**

/s/ Robert H. Griffith

Robert H. Griffith, Esq.
Counsel for Defendant YOUNGEVITY
INTERNATIONAL, INC.