ROBERT H. GRIFFITH (admitted *pro hac vice*)
    rgriffith@foley.com
**FOLEY & LARDNER LLP**
321 North Clark Street, Suite 2800
Chicago, IL 60654
Telephone:  312.832.4500
Facsimile:   312.832.4700

IRINA N. KASHCHEYEVA (*pro hac vice* application forthcoming)
    ikashcheyeva@foley.com
**FOLEY & LARDNER LLP**
500 Woodward Avenue, Suite 2700
Detroit, MI 48226
Telephone:  313.234.7100
Facsimile:   313.234-2800

MICHAEL A. NARANJO, CA Bar No. 221449
    mnaranjo@foley.com
**FOLEY & LARDNER LLP**
555 California Street, Suite 1700
San Francisco, CA 94104-1520
Telephone:  415.434.4484
Facsimile:   415.434.4507

Attorneys for Defendant
YOUNGEVITY INTERNATIONAL, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| BRYAN CANARY, individually and on behalf of similarly situated, | Case No. 5:18-cv-03261-EJD |
| Plaintiff, | **REPLY IN SUPPORT OF MOTION TO DISMISS AND TO STRIKE CLASS ALLEGATIONS** |
| vs. | |
| YOUNGEVITY INTERNATIONAL, INC., | Judge:  Hon. Edward J. Davila |
| Defendant. | Hearing Date: November 15, 2018<br>Time:          9 a.m.<br>Place:         Courtroom 4 (5th Floor)<br>                   280 South 1st Street<br>                   San Jose, CA 95113 |
| | Case Filed:    May 31, 2018 |

# TABLE OF CONTENTS

I.    CANARY'S DIRECT LIABILITY ARGUMENTS ARE WITHOUT MERIT. .......................1

    A.    THE COMPLAINT DOES NOT—AND CANNOT—PLEAD FACTS TO
SUGGEST THAT THE CALL WAS PLACED BY WADE CORDELL, OR
THAT CORDELL WAS YOUNGEVITY'S EMPLOYEE. ............................................1

    B.    CANARY DOES NOT DISPUTE THAT DAC IS A SEPARATE COMPANY..........3

II.   CANARY FAILS TO PLEAD FACTS TO SUPPORT VICARIOUS LIABILITY. .................4

    A.    CANARY DOES NOT ALLEGE ACTUAL AUTHORITY OR CONTROL
OVER METHODS AND MEANS................................................................................4

    B.    CANARY'S RATIFICATION ARGUMENTS ARE WITHOUT MERIT. ..................8

        1.    Actual Or Apparent Agency Relationship Is Required To
Establish Ratification....................................................................................8

        2.    Canary Does Not Allege Facts Showing Youngevity's
Knowledge Of TCPA Violations...................................................................9

        3.    Canary's Complaint Fails To Allege Receipt Of Benefit By
Youngevity..................................................................................................10

    C.    CANARY'S WILLFUL/KNOWING VIOLATION CLAIM IS BARE-BONES
AND CONCLUSORY................................................................................................11

III.  THE COURT SHOULD STRIKE CLASS ALLEGATIONS....................................................12

    A.    NO DISCOVERY IS NECESSARY TO CONCLUDE THAT CANARY
CANNOT ESTABLISH TYPICALITY....................................................................12

    B.    *BRISENO* DOES NOT UNDERMINE YOUNGEVITY'S
ASCERTAINABILITY ARGUMENTS. .....................................................................14

    C.    NO DISCOVERY IS NECESSARY TO CONCLUDE THAT CANARY'S
PROPOSED CLASS IS FAIL-SAFE. .......................................................................15

4827-3986-5715.3

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alpha Inv., LLC v. Zynga, Inc.*,
  No. C 11-03500 JSW, 2012 WL 2135291 (N.D. Cal. June 12, 2012) (Resp. ) ....................................3

*Amini v. Heart Savers, LLC*,
  No. SACV1501139, 2016 WL 10621698 (C.D. Cal. Oct. 17, 2016) ...................................................14

*APB Associates, Inc. v. Bronco's Saloon, Inc.*,
  297 F.R.D. 302 (E.D. Mich. 2013) ...................................................................................................14

*Aranda v. Caribbean Cruise Line, Inc.*,
  179 F. Supp. 3d 817, 832 (N.D. Ill. 2016) ...........................................................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................................................................1, 3

*Batzel v. Smith*,
  333 F.3d 1018 (9th Cir. 2003) .............................................................................................................9

*Bee, Denning, Inc. v. Capital All. Grp.*,
  310 F.R.D. 614 (S.D. Cal. 2015) .......................................................................................................14

*Bellows v. NCO Fin. Sys., Inc.*,
  No. 3:07-CV-01413, 2008 WL 4155361 (S.D. Cal. Sept. 5, 2008)....................................................14

*Boyer v. Diversified Consultants, Inc.*,
  306 F.R.D. 536 (E.D. Mich. 2015) ....................................................................................................15

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) .....................................................................................................14, 15

*Buffin v. City & Cty. of San Francisco*,
  No. 15-CV-04959, 2018 WL 1070892 (N.D. Cal. Feb. 26, 2018) ....................................................15

*Christopher Seri v. Crosscountry Mortg., Inc.*,
  No. 1:16-CV-01214, 2016 WL 5405257 (N.D. Ohio Sept. 28, 2016)..................................................2

*Cross v. W. Coast Ctr., LLC*,
  No. 17-CV-1076, 2018 WL 2018178 (S.D. Cal. May 1, 2018) .........................................................11

*Cunningham v. Rapid Response Monitoring Servs., Inc.*,
  251 F. Supp. 3d 1187, 1199 (M.D. Tenn. 2017)................................................................................11

*DeBremaecker v. Short*,
  433 F.2d 733 (5th Cir. 1970) ............................................................................................................14

4827-3986-5715.3

*Del Valle v. Glob. Exch. Vacation Club*,
    320 F.R.D. 50 (C.D. Cal. 2017) ...........................................................................13

*Dobkin v. Enter. Fin. Grp., Inc.*,
    No. 2:14-CV-01989, 2014 WL 4354070 (D.N.J. Sept. 3, 2014) ........................7

*Doninger v. Pac. Nw. Bell, Inc.*,
    564 F.2d 1304 (9th Cir. 1977) ...........................................................................12

*Estrada v. iYogi, Inc.*,
    No. CV21301989, 2015 WL 5895942 (E.D. Cal. Oct. 6, 2015).........................14

*Freidman v. Massage Envy Franchising, LCC*,
    No. 3:12-CV-02962, 2013 WL 3026641 (S.D. Cal. June 13, 2013) ...............3, 4

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982)............................................................................................12

*Gould v. Farmers Ins. Exch.*,
    288 F. Supp. 3d 963, 969 (E.D. Mo. 2018)..........................................................6

*In re Graphics Processing Units Antitrust Litig.*,
    253 F.R.D. 478 (N.D. Cal. 2008)........................................................................14

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...........................................................................13

*Henderson v. United Student Aid Funds, Inc.*,
    No. 13CV1845, 2017 WL 766548 (S.D. Cal. Feb. 28, 2017)..............................6

*Hennighan v. Insphere Ins. Sols., Inc.*,
    38 F. Supp. 3d 1083, 1101 (N.D. Cal. 2014), *aff'd*, 650 F. App'x 500 (9th Cir. 2016) ......................7

*Hodgin v. UTC Fire & Sec. Americas Corp.*,
    885 F.3d 243 (4th Cir. 2018) ..............................................................................11

*Holden v. Hagopian*,
    978 F.2d 1115 (9th Cir. 1992) ..............................................................................1

*United States ex rel. Humane Soc'y of the United States v. Westland/Hallmark Meat Co.*,
    No. EDCV0800221, 2010 WL 11464786 (C.D. Cal. Aug. 5, 2010).....................3

*In re Jiffy Lube*,
    847 F. Supp. 2d 1253 (S.D. Cal. 2012) ................................................................4

*John v. Nat'l Sec. Fire & Cas. Co.*,
    501 F.3d 443 (5th Cir. 2007) ..............................................................................14

*Jones v. All Am. Auto Prot., Inc.*,
    No. 314CV00199LRHWGC, 2015 WL 7566685 (D. Nev. Nov. 24, 2015) ................10, 11

*Jones v. Royal Admin. Servs., Inc.*,
  887 F.3d 443 (9th Cir. 2018) ..........................................................1, 4, 5, 6, 7, 8, 13

*Kern v. VIP Travel Servs.*,
  No. 1:16-CV-8, 2017 WL 1905868 (W.D. Mich. May 10, 2017) ..........................................5

*Knapp v. Sage Payment Sols., Inc.*,
  No. 17-CV-03591-MMC, 2018 WL 659016 (N.D. Cal. Feb. 1, 2018) ..........................4, 5, 6, 7, 8, 10

*Knutson v. Schwan's Home Serv., Inc.*,
  No. 3:12-CV-0964, 2013 WL 4774763 (S.D. Cal. Sept. 5, 2013) ..........................................14

*Lary v. Trinity Physician Fin. & Ins. Servs.*,
  780 F.3d 1101 (11th Cir. 2015) ..........................................................11

*Lemieux v. Lender Processing Center*,
  No. 16-cv-1850, 2017 WL 1166430 (S.D. Cal. Mar. 29, 2017) ..........................................2

*Makaron v. GE Sec. Mfg., Inc.*,
  No. CV-14-1274, 2015 WL 3526253 (C.D. Cal. May 18, 2015) ..........................................5

*McCrary v. Elations Co., LLC*,
  No. EDCV 13-00242, 2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ..........................................13

*Meeks v. Buffalo Wild Wings, Inc.*,
  No. 17-CV-07129, 2018 WL 1524067 (N.D. Cal. Mar. 28, 2018) ..........................................3

*Milo & Gabby, LLC v. Amazon.com, Inc.*,
  12 F. Supp. 3d 1341, 1354 (W.D. Wash. 2014) ..........................................................2

*Mullins v. Direct Digital, LLC*,
  795 F.3d 654 (7th Cir. 2015) ..........................................................15

*Naiman v. TranzVia LLC*,
  No. 17-CV-4813, 2017 WL 5992123 (N.D. Cal. Dec. 4, 2017) ..........................................5, 10

*Noble v. Chambers*,
  No. 3:13-CV-130, 2013 WL 3338659 (E.D. Va. July 2, 2013) ..........................................3

*Patterson v. O'Neal*,
  673 F. Supp. 2d 974 (N.D. Cal. 2009) ..........................................................2

*In re Pet. by Dish Network, LLC et al.*,
  28 F.C.C. Rcd. 6574 (2013) ..........................................................3, 4

*Poland v. United States Attorney Gen.*,
  No. CV1002878, 2012 WL 13001837 (C.D. Cal. July 30, 2012) ..........................................6, 7

*In re Portfolio Recovery Assocs., LLC, Tel. Consumer Prot. Act Litig.*,
  No. 11MD2295, 2014 WL 223557 (S.D. Cal. Jan. 8, 2014) ..........................................7

*Randleman v. Fidelity Nat'l Title Ins. Co.*,
646 F.3d 347 (6th Cir. 2011) ...............................................................................15

*Riechman v. Poshmark, Inc.*,
267 F. Supp. 3d 1278, 1285-86 (S.D. Cal. 2017) ................................................1

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*,
863 F.3d 460 (6th Cir. 2017) ...............................................................................14

*In re SFPP Right-of-Way Claims*,
No. CV1507492, 2017 WL 2378363 (C.D. Cal. May 23, 2017)...................14, 15

*Smith v. Securus Techs., Inc.*,
120 F. Supp. 3d 976, 982 (D. Minn. 2015) ...........................................................3

*Smith v. State Farm Mut. Auto. Ins. Co.*,
30 F. Supp. 3d 765, 779 (N.D. Ill. 2014) ............................................................11

*Thomas v. Taco Bell Corp.*,
582 F. App'x 678 (9th Cir. 2014) ......................................................................7, 9

*Toney v. Quality Res., Inc.*,
75 F. Supp. 3d 727, 745-46 (N.D. Ill. 2014) .......................................................11

*Trenz v. Sirius Xm Radio, Inc.*,
No. 15CV0044, 2015 WL 11658715 (S.D. Cal. July 13, 2015)...........................7

*United States v. Milovanovic*,
678 F.3d 713 (9th Cir. 2012) ................................................................................7

*Wagner v. CLC Resorts & Developments, Inc.*,
32 F. Supp. 3d 1193, 1195 (M.D. Fla. 2014) ......................................................11

*Weddle v. Smith & Nephew, Inc.*,
No. 14 C 09549, 2016 WL 1407634 (N.D. Ill. Apr. 11, 2016).............................3

*Wick v. Twilio Inc.*,
No. C16-00914, 2017 WL 2964855 (W.D. Wash. July 12, 2017) ........................2

*Wiener v. Dannon Co.*,
255 F.R.D. 658 (C.D. Cal. 2009) ........................................................................13

*Yordy v. Plimus, Inc.*,
No. C12-0229, 2013 WL 5832225 (N.D. Cal. Oct. 29, 2013).............................13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Statutes**

47 U.S.C.

§ 227(b)(1)(A)(iii)............................................................................................................3, 4

§ 227(b)(1)(A)(iii)..............................................................................................................10

§227(b)(1)(B)........................................................................................................................10

**Federal Rules**

Rule 23 ..........................................................................................................................12, 14

Rule 23(a)..........................................................................................................................12

Rule 23(b)(3) ....................................................................................................................14

**Other Authorities**

16 C.F.R. § 310.6(b)(7)......................................................................................................10

Nothing in Canary's Response—which, like his Complaint, is high on hyperbole but light on facts—saves this case from dismissal. With respect to direct liability, the Complaint and, specifically, the paragraphs cited in the Response do not allege any *facts* to suggest that the call to Canary was made by Youngevity's employee.[1]

With respect to vicarious liability, Canary recognizes that his apparent authority arguments are without merit and abandons that claim. Although Canary still presses on with his actual authority claim, his Response fails to point to any factual support for the notion that Youngevity authorized the call or controlled the method or means of the caller's operations. That alone is fatal to Canary's claim, but the *Jones* factors provide an additional independent reason for the dismissal. Finally, as to Canary's ratification theory, he cannot explain away any of Youngevity's opening arguments or distinguish this case from the binding Ninth Circuit authority. The conclusory allegations in Canary's Complaint cannot "unlock the doors of discovery." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

Canary's motion to strike arguments is similarly without merit. The broad and ambiguous proposed class is not limited to the call or even campaign received by Canary, or placed by Wade Cordell or DAC, or even related to the business loans, and membership in the class turns, in part, on whether the caller was, indeed, Youngevity's agent. No amount of discovery is necessary to conclude that such class is overly broad, not objectively defined, an improper fail-safe class, and fails typicality.

## I.   CANARY'S DIRECT LIABILITY ARGUMENTS ARE WITHOUT MERIT.

### A.   THE COMPLAINT DOES NOT—AND CANNOT—PLEAD FACTS TO SUGGEST THAT THE CALL WAS PLACED BY WADE CORDELL, OR THAT CORDELL WAS YOUNGEVITY'S EMPLOYEE.

This Court must "examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992). Canary acknowledges that the speaker in the message introduced himself as "'Renee' with David Allen Capital" (Compl. ¶¶ 42-44), supporting the inference that the call was made by someone affiliated with DAC.[2]

---

[1] Contrary to statements in Canary's Response (at 6), Youngevity made clear, and hereby reiterates, that Cordell is not an employee of Youngevity and had nothing to do with pre-recording or placing the call at issue. (Dkt. 20, Resp. at 1-2 n.1; at 8 & n.4)

[2] Canary's Complaint is a far cry from the cases cited in the Response. *See  Riechman v. Poshmark, Inc.*, 267 F. Supp. 3d 1278, 1285-86 (S.D. Cal. 2017) (denying motion to dismiss where the complaint alleged

None of the allegations in Plaintiff's Complaint, even as distorted in his Response (at 4), supports a conclusion that the call was placed by Wade Cordell. For the Court's convenience, these allegations are summarized and compared against the actual language in the Complaint in <u>Exhibit A</u> to this Motion.

Plaintiff relies on the same sparse allegations (Resp. at 5-6 (citing Compl. ¶¶ 45-48)) to support his allegation that Cordell may have been Youngevity's employee. As also reflected in Exhibit A, this conclusion simply does not follow. If anything, the allegations in the Complaint all operate to negate this inference.[3] At most, Cordell was affiliated with DAC, a company within the Youngevity umbrella. (Compl. ¶ 33.) In light of this "obvious alternative explanation," the statement that Cordell could be Youngevity's employee is not plausible. *Patterson v. O'Neal*, 673 F. Supp. 2d 974, 982 (N.D. Cal. 2009) (obvious alternative explanations are relevant to whether facts are plausible).

Nor is Canary's assertion that Cordell was either an employee of Youngevity or a sales agent "for Youngevity and DAC" (Compl. ¶ 34) simply a form of alternative pleading. "[P]ursuit of alternate relief does not relieve plaintiffs of their obligation to plead sufficient factual allegations in support of that request.'" *Milo & Gabby, LLC v. Amazon.com, Inc.*, 12 F. Supp. 3d 1341, 1354 (W.D. Wash. 2014). Here, precisely as in *Elf-Man, LLC v. Cariveau*, Canary failed to support his direct liability theory with plausible factual assertions.[4] The allegations against any particular defendant must plausibly allege

---

defendant transmitted text message to plaintiff's number); *Lemieux v. Lender Processing Center*, No. 16-cv-1850, 2017 WL 1166430, at *5 (S.D. Cal. Mar. 29, 2017) (denying defendant's motion to dismiss where the complaint alleged that, upon being transferred, plaintiff was told that the call was from defendant); *compare with Wick v. Twilio Inc.*, No. C16-00914, 2017 WL 2964855, at *4 (W.D. Wash. July 12, 2017) (complaint did not plead the telemarketer initiated the call where, immediately after plaintiff left the seller's website, he received a phone call from a call center pushing him to complete his order, but defendant was not alleged to operate a call center); *Christopher Seri v. Crosscountry Mortg., Inc.*, No. 1:16-CV-01214, 2016 WL 5405257, at *5 (N.D. Ohio Sept. 28, 2016) (TCPA vicarious liability claim dismissed where the only link between defendant and telemarketer's calls was the telemarketer's leads website, but the complaint did not link the website to the calls to plaintiff).

[3] These allegations include the statement that Cordell was a "*DAC* client support specialist," the caller's self-identification as somebody "with *David Allen Capital*," the reference to the loan materials as a "*DAC* application" and "*DAC* Funding Prequalification," the fact that Rutz was the founder of *DAC*, the description of the "voice to text" training video at issue as a "*DAC*/Youngevity" video designed to market loans "*through DAC*," the allegation that *DAC* was the company that marketed small business loans for Youngevity, and the statement that Youngevity only "takes over" after the customer consents to the outreach by filling out a pre-qualification form (Compl. ¶¶ 2, 44, 48-50, emphasis added.) In addition, Youngevity's Policies state that its distributors are not employees. (Dkt. 20-1,Wallach Decl., Ex. 2 (hereinafter "Youngevity's Policies"), ¶ D.1).)

[4] No. C13-0507, 2014 WL 202096, at *1-2 (W.D. Wash. Jan. 17, 2014) (complaint dismissed where, per plaintiff's alternative allegations, defendant "may have directly and intentionally stolen plaintiff's

liability based on that defendant's own conduct. *Iqbal*, 556 U.S. at 676. Canary's statement fails to do that. *See, e.g.*, *Freidman v. Massage Envy Franchising, LCC*, No. 3:12-CV-02962, 2013 WL 3026641, at *3 (S.D. Cal. June 13, 2013) (TCPA complaint dismissed where plaintiffs alleged that each defendant was "an agent ***and/or*** employee" of the defendant) (emphasis added).[5]

## B.    CANARY DOES NOT DISPUTE THAT DAC IS A SEPARATE COMPANY.

Canary does not, and cannot, dispute that DAC is ***a separate company*** based in Michigan. (Dkt. 20-2, Griffith Decl., Ex. 1 & 2.) Nor does Plaintiff urge the Court to pierce Youngevity's corporate veil. That should end the Court's inquiry as to the alleged direct liability of Youngevity.

Nevertheless, Canary theorizes that Youngevity should be <u>directly</u> liable for the call based on its alleged approval of the loan-related script, the allegation that, at some point, Youngevity "take[s] over," and that Youngevity supposedly pays commissions on the resulting sales. (Resp. at 6-7.) Canary's theory is not supported by the TCPA. TCPA direct liability turns on who "make[s] a call" —*i.e.*, the entity that "takes the steps necessary to physically place a telephone call." 47 U.S.C. § 227(b)(1)(A)(iii); *In re Pet. by Dish Network, LLC et al.* (the "2013 *Dish Network* Order"), 28 F.C.C. Rcd. 6574, 6583, ¶ 26 (2013). Direct liability does not extend to those who "might merely have some role . . . in the causal chain that results in the making of a telephone call." *Meeks v. Buffalo Wild Wings, Inc.*, No. 17-CV-07129, 2018 WL 1524067, at *4 (N.D. Cal. Mar. 28, 2018). Even if Plaintiff had alleged that Youngevity prerecorded the call at issue, it still was not Youngevity who "ma[d]e" the call for TCPA purposes. *Smith v. Securus Techs., Inc.*, 120 F. Supp. 3d 976, 982 (D. Minn. 2015) (though defendant inserted a recorded message into each call placed by inmates, it was still the inmates who "ma[d]e" the

---

copyrighted material, or she may simply have 'facilitated' unauthorized copying" and no scenario is more likely than the other); *see also Weddle v. Smith & Nephew, Inc.*, No. 14 C 09549, 2016 WL 1407634, at *2 (N.D. Ill. Apr. 11, 2016) (claims against three defendants not plausible where plaintiff alleged fracture of one defendant's component "and/or" defects in each of the other defendants' components); *Noble v. Chambers*, No. 3:13-CV-130, 2013 WL 3338659, at *4-5 (E.D. Va. July 2, 2013) (complaint dismissed where plaintiff simply alleged that "[o]ne of the Sheriffs" struck him and did not include facts showing that it is not just possible but plausible that each defendant was the attacker).

[5] Unlike plaintiff in *Alpha Inv., LLC v. Zynga, Inc.*, No. C 11-03500 JSW, 2012 WL 2135291, at *1 (N.D. Cal. June 12, 2012) (Resp. at 5), Canary is not without knowledge of the relevant facts—he was expressly told that the caller was "with David Allen Capital." Canary simply hypothesizes regarding the level of Youngevity's involvement, without providing any factual support for these theories. *See also United States ex rel. Humane Soc'y of the United States v. Westland/Hallmark Meat Co.*, No. EDCV0800221, 2010 WL 11464786, at *15 (C.D. Cal. Aug. 5, 2010) (simple hypotheticals about which companies owned or operated the facilities are not sufficient and do not open the doors to discovery).

calls). Imposing direct liability for mere "participation" in the recording of the message, where one has no control over when, to whom and how the call is made, would make no sense and is directly contrary to the language of the statute, which prohibits "***mak[ing]*** any call . . . using . . . prerecorded voice," 47 U.S.C. § 227(b)(1)(A)(iii)).[6]

## II.   CANARY FAILS TO PLEAD FACTS TO SUPPORT VICARIOUS LIABILITY.
### A.   CANARY DOES NOT ALLEGE ACTUAL AUTHORITY OR CONTROL OVER METHODS AND MEANS.

In the Ninth Circuit, there are two types of actual authority: actual authority to place unlawful calls and authority to control the manner and means of one's telemarketing. *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018). Plaintiff's Complaint fails under both theories.

***Actual Authority.*** To establish this type of authority, Canary must "establish actual authority to place the unlawful calls." *Id.* at 449. Canary argues that "Youngevity authorized Wade Cordell to make the call he did, using autodialing technology and leaving the prerecorded voicemail message, with a script created, in part, by Youngevity's own VP." (Resp. at 7-8 (citing Compl. ¶¶ 23, 30-32, 45-50, 74, 81, 92).) Even assuming Cordell "ma[d]e the call" (and he did not), none of the Complaint paragraphs referenced in Canary's Response alleges any facts—as opposed to conclusory, "upon information and belief" or "in-the-alternative" allegations—describing any "act specifically mentioned [by Youngevity] to be done in a written or oral communication" that authorized the outreach to Canary. *Knapp v. Sage Payment Sols., Inc*., No. 17-CV-03591-MMC, 2018 WL 659016, at \*2 (N.D. Cal. Feb. 1, 2018); *see also* Dkt. 20, at pp. 10-19) & Exhibit A hereto.

Canary argues that "Youngevity trainings and advertising policies actively encouraged automated telemarketing techniques, like robocalling." (Resp. at 10.) But the Complaint's allegations regarding trainings do not support this (Compl. ¶¶ 32-33, 47-48, 50, 67), and Youngevity's policies do not even reference automated/prerecorded messages or robocalling. (Dkt. 20-1, Wallach Decl., Ex. 1-2.) As discussed in Exhibit A, even assuming Rutz participated in the training in his capacity as Youngevity's VP, rather than the founder of DAC, the alleged "voice to text" training had nothing to do

---

[6] *In re Jiffy Lube*, 847 F. Supp. 2d 1253 (S.D. Cal. 2012), cited by Plaintiff is inapposite because it was decided prior to the 2013 *Dish Network* Order and because it simply holds that "congressional actions include vicarious liability even if not implicitly stated." *Freidman*, 2013 WL 3026641, at \*4.

1    with prerecorded messages or robocalls (and instead related to texts), did not produce any prerecorded

2    message, and did not direct the use of particular equipment or methods. (Compl. ¶¶ 32, 44-48.)

3        Further, as in *Jones*, Youngevity's Policies expressly preclude any claim that Cordell or other

4    distributors had actual authority to place the calls. (Youngevity's Policies, ¶ D.1, I.3; *Jones*, 887 F.3d at

5    443 ("Any claim that AAAP had actual authority to place the calls is precluded by the . . . language in

6    Royal's contract . . . expressly prohibiting telemarketing methods that would violate state or federal

7    law."). Canary tries to distinguish *Jones* because there, there were "no facts contradicting this

8    contractual limitation on authority." (Resp. 9-10) But as explained above, neither are there here.

9        Canary attempts to further distinguish *Jones* because Youngevity's Policies did not expressly

10   preclude "robocalls." (Resp. at 3.) To begin with, the decision in *Knapp* cited by Canary actually granted

11   a motion to dismiss a TCPA vicarious liability claim, making the court's questions related to a "far more

12   general provision" mere dicta. 2018 WL 659016, at *3. Further, this discussion arose in the context of

13   implied authority—not express authority. And most importantly, the provision in Youngevity's Policies

14   is much more detailed than the one in *Knapp*, requiring "complete compliance with federal statutes,"

15   and cautioning against violations of "company policies or federal, state, and or local statutes," given the

16   "highly regulated and monitored industry" in which Youngevity operates. (Dkt. 20-1, Wallach Decl.,

17   Ex. 1, p. 4 of 46.) Given this language, it would be unreasonable to conclude that Youngevity gave its

18   distributors actual authority to call Canary in violation of the TCPA.[7]

19       ***Control Of Manner And Means Of Telemarketing.*** Canary does not dispute that the Complaint

20   is devoid of facts to suggest that Youngevity controlled "the manner and means" of Cordell's, DAC's, or

21   other distributors' telemarketing activities. Control, which is the first factor in the *Jones* test, is the

22   essential ingredient of an agency relationship, and, as Canary recognizes (Resp. at 8), frequently

---

[7] *Jones*, 887 F.3d at 449 (affirming district court's dismissal of actual authority argument because "it is undisputed that the contract between [the defendant] and [the telemarketer] expressly prohibited 'any act or omission that violates applicable state or Federal law, including but not limited to 'robo-calling'"); *see also Naiman v. TranzVia LLC*, No. 17-CV-4813, 2017 WL 5992123, at *11 (N.D. Cal. Dec. 4, 2017) (no authority existed where the telemarketer had to comply with the laws); *Kern v. VIP Travel Servs.*, No. 1:16-CV-8, 2017 WL 1905868, at *6 (W.D. Mich. May 10, 2017) (no express authority can exist where the contract required compliance with all applicable laws); *see Makaron v. GE Sec. Mfg., Inc.*, No. CV-14-1274, 2015 WL 3526253, at *7 (C.D. Cal. May 18, 2015) (actual authority fails where under the contracts, dealers are independent contractors without authority to legally bind defendant).

4827-3986-5715.3

determinative. Citing inapposite out-of-circuit cases,[8] Canary disingenuously argues that this factor "weighs in favor of agency" based on Youngevity's requirement to approve the sales scripts and other advertising. (Resp. at 8-9.) However, such pre-approval—focused on protection of Youngevity's marks, goodwill and reputation, and not compliance with the TCPA—is insufficient to establish control over means and methods of the telemarketer's operations in the Ninth Circuit.[9] In addition, the type of "one-time" control that exists by setting out in detail contractual obligations of the parties is significantly different than the discretionary control of the principal over its agent's conduct. *Poland v. United States Attorney Gen.*, No. CV1002878, 2012 WL 13001837, at *7 (C.D. Cal. July 30, 2012).

For example, in *Jones*, the Ninth Circuit expressly stated that, even though the telemarketer was required to use only pre-approved "scripts and materials," defendant did not have sufficient control over the telemarketer's operations where defendant did not have the right to control the hours the telemarketers worked or to set quotas for the number of calls or sales the telemarketers had to make. *Jones*, 887 F.3d at 451. Here, too, distributors were independent contractors and Youngevity "***does not dictate selling methods, specific hours, or effort levels of its distributors***," and "imposes no restrictions on any Distributor's participation or sales activities in other businesses and programs other than Youngevity." (Youngevity's Policies, ¶ D.1 (emphasis added).)

Canary seizes on dicta in *Jones* that defendant had no control over the telemarketer until the telemarketer decided to pitch defendant's services and there was no evidence that defendant's services were in fact pitched. 887 F.3d at 451. Of course, the same is true here. The only company referenced during the call to Canary was DAC. (Compl. ¶ 44.) And unlike in *Jones*, Youngevity is not alleged to be a lender of any loans marketed through DAC and does not allegedly "take over" until after the customer fills out a pre-qualification form. (Compl. ¶¶ 50, 78.) In any event, other cases in the Ninth Circuit hold

---

[8] *See Gould v. Farmers Ins. Exch.*, 288 F. Supp. 3d 963, 969 (E.D. Mo. 2018) (allegations of the principal's active and repeated participation in sending unlawful text messages; directing the content of agents' advertising; and actual approval of ten separate text messages sent to plaintiff); *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 832 (N.D. Ill. 2016) (evidence that defendant required its agent to provide exact audio file of each call made using the survey script, and defendant's attorneys proposed edits to the telephone script).

[9] *Knapp*, 2018 WL 659016, at *3-4 (control insufficient to impose TCPA vicarious liability where neither pre-approval of marketing materials nor audit focused on compliance with the TCPA); *Henderson v. United Student Aid Funds, Inc.*, No. 13CV1845, 2017 WL 766548, at *7 (S.D. Cal. Feb. 28, 2017) (no actual authority where defendant audited the collector's practices, but audit had nothing to do with the TCPA).

that "knowledge, ***approval***, and fund administration do not amount to controlling the manner and means of the text message campaign."[10] This factor is fatal to, and dispositive of, the vicarious liability claim.[11]

In addition, Canary's Complaint flunks virtually all of the other *Jones* factors.[12]

- **(2) Vendor's Distinct Occupation & (8) Vendor's Regular Business**. Youngevity's distributors do not market exclusively for Youngevity; they obtain leads for multiple other clients in a variety of industries, which Youngevity expressly does not control. In addition, Youngevity's distributors do not sell Youngevity's own products and services, making this case very different from the situation where the vendor markets only the defendant's products. Compl. ¶ 78; *Trenz v. Sirius Xm Radio, Inc.*, No. 15CV0044, 2015 WL 11658715, at *2 (S.D. Cal. July 13, 2015) (agency relationship is far more plausible where a marketing company promotes its own product). Contrary to Plaintiff's argument (Resp. at 11-12 & n.5), the Complaint offers no support for the proposition that DAC's distributors (or Wade Cordell specifically) worked exclusively for Youngevity. *Jones*, 887 F.3d at 452.

- **(3) Work Normally Done Under Defendant's Supervision**. Cordell, DAC or DAC's distributors are not alleged to have performed their work under Youngevity's supervision. To the contrary, Youngevity's Policies emphasize that Youngevity treats distributors as independent contractors and ***does not*** dictate selling methods, specific hours, or effort levels. (Youngevity's Policies, ¶ D.3.) Canary offers no facts to suggest that the distributors—or Cordell—were classified as independent contractors improperly.[13]

- **(5) Supply of Tools & Instrumentalities & Place of Work.** Canary does **not** allege that: (a) Youngevity supplied any of the tools or instrumentalities of work (like phone lines, computers, internet or office space) to Cordell or another distributor who made the call; (b) that the voicemail to Canary came from the phone number associated with Youngevity (or DAC); or (c) that the website referenced in the voicemail had any relation to Youngevity (or

---

[10] *Thomas*, 879 F. Supp. 2d at 1086 (emphasis added); *Hennighan v. Insphere Ins. Sols., Inc.*, 38 F. Supp. 3d 1083, 1101 (N.D. Cal. 2014), *aff'd*, 650 F. App'x 500 (9th Cir. 2016) (no control over means and manner of calls established where agents were required to use pre-approved script while selling products over the phone and all means of advertising were controlled by the defendant).

[11] The vicarious liability cases cited by Plaintiff are factually distinguishable. *See In re Portfolio Recovery Assocs., LLC, Tel. Consumer Prot. Act Litig.*, No. 11MD2295, 2014 WL 223557, at *2 (S.D. Cal. Jan. 8, 2014) (parent company was "directly involved" in the subsidiary's TCPA violations and the parent's employees had "direct, personal participation" in the calls and the operation of the subsidiary's call centers); *Dobkin v. Enter. Fin. Grp., Inc.*, No. 2:14-CV-01989, 2014 WL 4354070, at *4 (D.N.J. Sept. 3, 2014) (principal's and agent's websites display the same products, are linked to each other, and principal maintained full visibility into the agent's telemarketing practices).

[12] The only factor that inures to Canary's benefit is the tenth one—Youngevity is a business. However, courts routinely dismiss vicarious liability TCPA claims notwithstanding the alleged principal being a business. *See, e.g., Knapp*, 2018 WL 659016, at *5. In addition, the Complaint is silent on the fifth factor, the skills required to perform the services, so that factor does not inform the Court's analysis.

[13] Plaintiff relies on *United States v. Milovanovic*, 678 F.3d 713, 724-25 (9th Cir. 2012), to argue that courts can look underneath the independent contractor label. But *Milvanovic* involved a criminal liability statute. In the civil realm, "clear language indicating that the individual performing services will be an independent contractor reflects the parties' intentions . . . , and supports a finding that the individual is not an employee." *Poland*, 2012 WL 13001837, at *6 (alterations omitted).

DAC). Notably, Youngevity's Policies do not limit distributors to any geographic area and disclaim any responsibility for any expenses relating to a distributor's business. (Youngevity's Policies, ¶¶ C.3, D.2.)[14]

- **(6) The Length Of Time**. The Complaint alleges that Cordell sold his herbal supplement company to Youngevity in 2014 and has been "affiliated" with Youngevity since, but does not elaborate in which capacity. (Compl. ¶ 45.) The term "affiliated" is too loose. *Cellco P'ship*, 2013 WL 5436553, at *7 (the assertion that the entities are "affiliated" is "simply too conclusory"). Regardless, under Youngevity's Policies, any individual may sell as little or as much as he would like and as frequently or seldom as he would like; a distributor may terminate his distributor position "at any time by providing written notice to the Company," including simply by email; and Youngevity can likewise terminate a distributor effective immediately without good cause. (Youngevity's Policies, ¶¶ C.6-C.7, D.5.) The intentional *impermanency* of this relationship shows lack of control. *Jones*, 887 F.3d at 452 (no agency found where the contract could be terminated on a 30 days' notice). Even if DAC were a subsidiary of Youngevity, its distributors do not have a "permanent, and interdependent" relationship with Youngevity.

- **(7) Whether Payment Is By Time Or By The Job**. Youngevity's distributors are paid commission for each sale, rather than for the time they worked. (Youngevity's Policies, ¶ D.5; *see also* Compl. ¶ 66.) As the Ninth Circuit noted, "this is a strong indicator that [defendant] lacked sufficient authority to control the [vendor]." *Jones*, 887 F.3d at 452.

- **(9) The Subjective Intent Of The Parties**. Under Youngevity's Policies, distributors are independent contractors and not employees or agents of the Company. (Youngevity's Policies, ¶ D.1.) Additionally, the Policies prohibit distributors from implying or representing employment or agency relationships in any manner, require distributors to list themselves as "Independent Distributor[s] of Youngevity," and allow distributors to sell on behalf of other companies and businesses. (*Id.* ¶¶ D.1, E.6, I.8(b)-(c).) These provisions reflect the signatories' subjective intent that distributors operate as independent contractors. *Knapp*, 2018 WL 659016, at *5 (independent contractor disclaimers in the contract weighed against the finding of agency); *Jones*, 877 F.3d at 450 (alleged agent's services to multiple companies "indicat[ed]" its "intent was to . . . operate as independent contractor[ ]").

**B.    CANARY'S RATIFICATION ARGUMENTS ARE WITHOUT MERIT.**

    **1.    <u>Actual Or Apparent Agency Relationship Is Required To Establish Ratification.</u>**

Canary recognizes that controlling Ninth Circuit precedent holds that the principal-agent relationship is still required for ratification. (Resp. at 14-15 (citing *Batzel v. Smith*, 333 F.3d 1018 (9th

---

[14] Canary argues that "Youngevity, **through DAC**, . . . directs its services sales agents to websites that make available 1-800 numbers with prerecorded messaging tools and encourages them to cold call potential customers. . . ." (Compl. ¶ 4.) But there is no suggestion that Youngevity itself actually provided its telemarketers with any 1-800 numbers, or shared any of customer/target phone numbers. Even though Youngevity and/or DAC allegedly provided some training, as in *Jones*, distributors themselves provided most tools and instrumentalities to actually make the calls. Under *Jones*, control is insufficient under the fifth factor on these facts.  887 F.3d at 452.

Cir. 2003)); *see also Thomas v. Taco Bell Corp.*, 582 F. App'x 678 (9th Cir. 2014)). Canary still argues that *Batzel* was somehow invalidated by virtue of the Restatement (Third) of Agency's publication in 2006. This suggestion is absurd. Like the Second Restatement, the Third Restatement requires either actual or apparent authority to exist for the ratification theory to be viable. (*Id.* § 4.03 cmt. b.) Canary quotes a part of the comment to the Third Restatement that ratification "may create a relationship of agency when none existed before," but omits the remaining statement in the same comment that "[i]t is necessary that the actor have acted or purported to act on behalf of the ratifier. . . . This limits the range of ratifiable acts to those done by an actor who is an agent or who is not an agent but pretends to be." (*Id.* § 4.01 cmt. b.) *Batzel* has not been overruled and remains binding law. As discussed *supra* at § II.A., Canary cannot establish actual agency and has abandoned his apparent authority arguments.

**2.     Canary Does Not Allege Facts Showing Youngevity's Knowledge Of TCPA Violations.**

Canary argues that Youngevity's generic knowledge of "telemarketing" is a sufficient basis to find ratification. (Resp. at 17-18.) The same argument was made and rejected in *Kristensen*, where the Court held that the knowledge of the vendor's use of text messaging to generate ***thousands of leads a day*** was "not the sort of red flag that would lead a reasonable person to investigate"—since not all text messages are unlawful. 879 F.3d at 1015; Appellee Br., 2016 WL 7046882, at *20 (9th Cir. Dec. 1, 2016). The same is true of prerecorded messages or autodialed calls.

Canary again points to the supposed "training." Even assuming "DAC/Youngevity" provided trainings on how to "move" small business loans (Compl. ¶ 32), there is no suggestion that any such trainings focused on the method or medium of outreach. Nor is there any suggestion that any trainings urged distributors to utilize ATDS or prerecorded messages in calling potential customers. To the extent the Complaint discusses "cold calling" (Compl. ¶¶ 4, 48), it does not suggest that Youngevity encouraged distributors to "cold call" using any particular method.[15] Ultimately, not all calls—even if

---

[15] The Complaint alleges that "Youngevity, through DAC," directed distributors to "websites that make available 1-800 numbers with prerecorded messaging tools and encourages them to cold call potential customers. . . ." (Compl. ¶ 4.) This allegation again improperly lumps Youngevity and DAC and, in any event, does not suggest that Youngevity encouraged cold calls to be placed using prerecorded messages. The Complaint also alleges, in a similarly conclusory and unsupported fashion, that Youngevity "allows employees or agents, like Wade Cordell, to market loans through David Allen Capital by making autodialed and prerecorded calls to non-customers for the purpose of selling Youngevity products and services."

1    placed via ATDS or using a prerecorded message or even if placed to "non-customers"—violate the

2    TCPA. The TCPA is violated only where telemarketing calls are placed via ATDS or using a

3    prerecorded message, without the called party's consent, and without falling under several exemptions

4    from this rule—including, as potentially applicable here, an exemption for business-to-business calls.

5    47 U.S.C. §§ 227(b)(1)(A)(iii), 227(b)(1)(B); 16 C.F.R. § 310.6(b)(7). Youngevity expressly required

6    each of its distributors to comply with federal laws, including the TCPA, and left the means and

7    methods of their marketing activities to their discretion.[16] Thus, even if one were to credit the conclusory

8    allegation that Youngevity was aware of the calls made using ATDS or prerecorded voice (and the Court

9    should not), that still is not enough to infer that Youngevity should have been aware of TCPA violations.

10         Unlike the cases cited by Canary, the Complaint does not allege that Youngevity ever received

11   reports of TCPA violations by its distributors—let alone violations by Cordell—or knew the calls were

12   placed to a number on the Do Not Call list, or was aware of other specific reasons for Youngevity to be

13   suspicious. *See, e.g., Abante*, 2018 WL 3707283, at *5 (defendant knew vendor had previously admitted

14   to violating telemarketing laws and was sued in a class action for similar violations). For the reasons

15   stated in *Kristenson*, Canary's allegations are insufficient to allege knowledge or a "red flag."

16         **3.    Canary's Complaint Fails To Allege Receipt Of Benefit By Youngevity.**

17         Canary argues that, although he did not enter into any transaction with Youngevity, the Court

18   should nevertheless find the requisite benefit of the transaction in telemarketing in general. (Resp. at 18.)

19   Notwithstanding this sophistic argument, courts routinely dismiss TCPA claims where the outreach did

20   not result in any completed sale to the plaintiff.[17] And as to Canary's argument that telemarketing in

21

22   (Compl. ¶ 74.) This ambiguous statement does not actually suggest that Youngevity knew of the use of
     ATDS/prerecorded calls to non-customers. In addition, the term "non-customers" cannot be synonymous

23   with lack of consent, as non-customers could have still consented to ATDS outreach or, in case of business
     telephone numbers, could have been exempt from consent requirements altogether. Thus, just like in

24   *Kristensen*, the Complaint alleges no facts to support an inference that Youngevity was aware of red flags
     that should have prompted further investigation. *Naiman*, 2017 WL 5992123, at *9 (ratification claim

25   dismissed even though the complaint alleged vendor generated leads using ATDS).
     [16] *See Naiman*, 2017 WL 5992123, at *13 (N.D. Cal. Dec. 4, 2017) (ratification not sufficiently alleged

26   where the vendor was solely in control of the messages it transmitted to obtain potential leads and was
     responsible for fully complying with applicable law); *Jones v. All Am. Auto Prot., Inc.*, No.

27   314CV00199LRHWGC, 2015 WL 7566685, at *5 (D. Nev. Nov. 24, 2015) (ratification theory fails because
     defendant's contract specifically required the vendor to comply with all state and federal laws).

28   [17] *See, e.g., Knapp*, 2018 WL 659016, at *7 (dismissing ratification claim because "there is nothing in the
     record to suggest Sage entered into any contract as a result of the challenged faxes or otherwise benefitted

general constitutes a "benefit," telemarketing itself is not illegal and there was nothing improper about Youngevity accepting the benefit of the telemarketing activities with its distributors. Plaintiff does not allege that Youngevity benefitted from any telemarketing that is allegedly illegal. *Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243, 254 (4th Cir. 2018) (plaintiff "failed to proffer any evidence … that illegal telemarketing practices increased [defendant's] sales of home-security product").[18]

### C.   CANARY'S WILLFUL/KNOWING VIOLATION CLAIM IS BARE-BONES AND CONCLUSORY.

Plaintiff's Response does not explain how Youngevity's relationship to the single call to Canary (whatever that was) amounted to a willful or knowing violation by ***Youngevity***. "While it is true that even a single, non-consented to phone call violates the TCPA, there must be something more than just the single call to constitute willfulness, otherwise every violation of the TCPA would be *per se* willful." *Cross v. W. Coast Ctr., LLC*, No. 17-CV-1076, 2018 WL 2018178, at *2 (S.D. Cal. May 1, 2018). In contrast to cases cited in Plaintiff's Response (at 20), Canary did not request communications to cease while continuing to receive the calls, or continued to receive the calls after notifying defendant that it called the wrong number, or simply received a large number of calls. Nor was Youngevity alleged to know that Canary's number was on the Do-Not-Call list. The Complaint certainly does not allege that Youngevity knew that any calls were placed in violation of the Act. *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015) (willful or knowing violation "requires the violator to know he was performing the conduct that violates the statute").[19] All Canary offers is the bare-bones

from MSI's violation of the TCPA"); *Jones v. All Am. Auto Prot., Inc.*, No. 314CV00199, 2015 WL 7566685, at *5 (D. Nev. Nov. 24, 2015) (ratification theory fails where "none of the Plaintiffs allege that they spoke to or did business with the administrator of vehicle service contracts as a result of the marketing vendor's calls"); *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 779 (N.D. Ill. 2014) (ratification theory fails because plaintiffs do not allege the telemarketer provided any leads to the defendant stemming from the telemarketing calls to plaintiffs); *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 745-46 (N.D. Ill. 2014) (ratification theory fails because plaintiff does not allege that defendants accepted any benefit that stemmed from the alleged agent's telemarketing calls to plaintiff).

[18] *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1199 (M.D. Tenn. 2017), and *Wagner v. CLC Resorts & Developments, Inc.*, 32 F. Supp. 3d 1193, 1195 (M.D. Fla. 2014), cited by Canary do not hold that telemarketing itself is a benefit that can support ratification. In both cases, plaintiffs alleged vendors' campaigns led to business for the defendant. *Cunningham*, 251 F. Supp. 3d at 1199 ("[Plaintiff] has alleged an unlawful telemarketing scheme the end result of which was the generation of business for [defendant], and he has alleged that [defendant] was an active participant in that scheme."); *Wagner* Compl., ¶ 31 (alleging that vendor successfully convinced call recipients to visit defendant's sales offices). None of this is true here.

[19] Though courts in the Ninth Circuit are split on the standard for willful or knowing calls, even under the

1   assertion that Youngevity "willfully and/or knowingly" violated the Act. This is a quintessential legal

2   conclusion that must be disregarded.

3   **III.   THE COURT SHOULD STRIKE CLASS ALLEGATIONS.**

4           Canary cannot demonstrate a "reasonable possibility" that the class certification hurdles

5   identified by Youngevity could be overcome in discovery, warranting striking class allegations at this

6   stage. *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977) (if plaintiff cannot make a

7   *prima facie* Rule 23 showing, he must demonstrate that discovery is likely to cure Rule 23 problems).

8           **A.     NO DISCOVERY IS NECESSARY TO CONCLUDE THAT CANARY CANNOT
                       ESTABLISH TYPICALITY.**

9           The typicality requirement in Rule 23(a) requires that the unnamed members' claims be "fairly

10  encompassed" within the class representative's own claim. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147,

11  157-58 (1982). In this case, Canary's claims are ***vastly different*** from claims of other putative class

12  members, in important and numerous ways. Canary's individual claim hinges on the voicemail

13  promoting small business loans and alleged to have been prerecorded by Wade Cordell—who, Canary

14  contends, is "either" an employee of Youngevity "or" an agent of Youngevity, through its "division"

15  DAC. By contrast, other putative class members' claims will unavoidably relate to calls promoting

16  ***entirely different products/services*** (all of which require different marketing approaches), placed by

17  ***entirely different distributors*** or ***third parties*** having ***nothing to do*** with DAC or Wade Cordell.

18          Unavoidably, some members' claims will proceed on a different theory of liability from the one

19  undergirding Canary's claim. Since, as discussed above, the Complaint does not adequately allege that

20  the call was made by Youngevity's employee, Canary's claims will not be typical of claims of those

21  putative members who were contacted by Youngevity's employees (and vice versa). Even within the

22  agency analysis, Canary's arguments are based, to a large extent, on DAC's allegedly intertwined

23  relationship with Youngevity (*see* Resp. at 11-13), and Cordell's alleged collaboration with David Rutz,

24  the founder of DAC, who also purportedly played a role in Youngevity (Resp. at 6-9). The issues

25  implicated in this analysis are different from issues relevant to analyzing agency between Youngevity

26

27  more relaxed standard, Youngevity needed to be aware of the call being made by Cordell or other
    distributors. As discussed in Youngevity's Motion (pp. 14-16, 19-20), the Complaint fails to allege such
28  knowledge.

and unaffiliated distributors or Youngevity and other companies, "arms" or "divisions," resulting in a substantial divergence in the evidence required under the *Jones* test. Canary would have no incentive to advance interests of other putative class members. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (noting that typicality turns, in part, on whether the named plaintiff will prosecute the action vigorously on behalf of the class). Conversely, because the sole voicemail Canary received did not mention Youngevity by name, did not come from Youngevity's phone number or refer to Youngevity's website, Canary will be subject to unique defenses not be applicable to the rest of the class. *Del Valle v. Glob. Exch. Vacation Club*, 320 F.R.D. 50, 57 (C.D. Cal. 2017) (typicality not met where the plaintiff could not recall the company that called him and would thus be subject to unique defenses).

As this Court noted in denying a motion for class certification in *Major v. Ocean Spray Cranberries, Inc.*, "[t]he typicality requirement has been found to not be satisfied where the evidence needed to prove at least one of the named plaintiff's claims is not probative of the other class members' claims." No. 5:12-CV-03067, 2013 WL 2558125, at *3-4 (N.D. Cal. June 10, 2013) (Davila, J.). Due to fundamental disparities between Canary's claims and claims of the rest of the class unaffiliated with DAC, the same is true here. On these facts, courts routinely deny certification on typicality grounds.[20]

Canary next argues that his claim is representative of the class because he allegedly received a prerecorded message ***and*** the call was placed using an ATDS, and these are alternative ways of establishing a TCPA violation. (Resp. at 22-23.) Instead of helping Canary's argument, this proves Youngevity's point. Having pled that the voicemail at issue was prerecorded, Canary will have no incentive to prove that the call was made using an ATDS. This underscores that Canary will not "have

---

[20] *See, e.g.*, *Wiener v. Dannon Co*., 255 F.R.D. 658, 665 (C.D. Cal. 2009) (typicality requirement not satisfied where the proposed class includes residents who purchased DanActive, Activia, or Activia Light, but the named plaintiff purchased only Activia); *McCrary v. Elations Co., LLC*, No. EDCV 13-00242, 2014 WL 1779243, at *11 (C.D. Cal. Jan. 13, 2014) (excluding online consumers from class definition because the class representative purchased the product in person and did not view any claims made on the website); *Yordy v. Plimus, Inc*., No. C12-0229, 2013 WL 5832225, at *4 (N.D. Cal. Oct. 29, 2013) (finding named plaintiff's claims to be atypical because, even though the misrepresentation may have been the same, the defendant's conduct in making misrepresentations was dissimilar).

incentives to fairly represent the absent class members. *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 489-90 (N.D. Cal. 2008).[21]

## B.   *BRISENO* DOES NOT UNDERMINE YOUNGEVITY'S ASCERTAINABILITY ARGUMENTS.

Plaintiff does not contest that he has not proposed a well-defined class, but merely argues that the Ninth Circuit's decision in *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) "declined to adopt an ascertainability requirement." (Resp. at 22.) Plaintiff's reading of *Briseno* is incorrect.

*Briseno* held that demonstrating "an administratively feasible way" to identify class members— such as, for example, by requiring them to present receipts—is not a prerequisite to class certification. *Id.* at 1128, 1133. But *Briseno* intentionally did not use the term "ascertainability" because "courts ascribe widely varied meanings to that term." *Id.* at 1124 & n.3. As the Ninth Circuit noted, some courts use the term to deny certification to "classes that are not clearly or objectively defined" or that create a fail-safe definition, and the "only issue" the *Briseno* court was weighing in on "whether a class proponent must proffer an administratively feasible way to identify class members. *Id.* at 1124 & n.3-4. Thus, even after *Briseno*, fundamental class identity and definitional considerations underlying the ascertainability requirement remain in place in the Ninth Circuit (and other circuits that rejected administrative feasibility requirement), and are considered directly under Rule 23.[22]

---

[21] The decisions Plaintiff cites in support of his position only emphasize why Canary's claims are not typical. *See Bee, Denning, Inc. v. Capital All. Grp.*, 310 F.R.D. 614, 626 (S.D. Cal. 2015) (a class of those who "received **the same prerecorded voice call** from **the same toll-free number traceable to Defendants**"); *Knutson v. Schwan's Home Serv., Inc.*, No. 3:12-CV-0964, 2013 WL 4774763, at *3 (S.D. Cal. Sept. 5, 2013) (class limited to **customers** of a non-party that had engaged defendants to make deliveries on its behalf); *Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-CV-01413, 2008 WL 4155361, at *2 (S.D. Cal. Sept. 5, 2008) (class limited to those who were "called by defendant debt collection company"); *Amini v. Heart Savers, LLC*, No. SACV1501139, 2016 WL 10621698, at *3 (C.D. Cal. Oct. 17, 2016) (class limited to people who had received calls made to market only the defendant's products); *Estrada v. iYogi, Inc.*, No. CV21301989, 2015 WL 5895942, at *1 (E.D. Cal. Oct. 6, 2015) (certified class limited to subscribers and former subscribers of defendant).

[22] *See, e.g., In re SFPP Right-of-Way Claims*, No. CV1507492, 2017 WL 2378363, at *14 (C.D. Cal. May 23, 2017) (denying class certification because individual class member identity issues regarding parcel ownership undercut predominance); *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 473-74 (6th Cir. 2017) (class certification denied because plaintiff "flunk[ed] the superiority requirement of Rule 23(b)(3)" by failing to present a manageable means of identifying class members); *APB Associates, Inc. v. Bronco's Saloon, Inc.*, 297 F.R.D. 302, 316 (E.D. Mich. 2013) (denying certification because proposed class definition was too "imprecise and amorphous"); *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 n.5 (5th Cir. 2007) ("There can be no class action if the proposed class is 'amorphous' or 'imprecise.'"); *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (certification denied for proposed class defined as residents "active in the 'peace movement'").

The proposed class in this case is not defined by reference to objective criteria. The Court cannot identify class members when, as part of doing so, it will need to decide whether each caller is a "Youngevity sales agent," based on many different theories, or whether a call was made by a "Youngevity company/division," or "for the purpose of soliciting the sale of products or services." The quagmire of identifying class members cannot be solved, for example, by reference to a call log or affidavits of class members. The "effort to litigate [these call]-specific issues of individual class members will greatly outweigh the relatively modest amount of trial time and effort required for the three common issues." *SFPP Right-of-Way Claims*, 2017 WL 2378363, at *15. Individualized issues inherent in the determination of whether each caller was a "Youngevity agent" would destroy predominance and fail the basic requirement of definiteness required for class certification, including the "weak" version of ascertainability that survived after *Briseno. See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659-60 (7th Cir. 2015).[23]

### C.   NO DISCOVERY IS NECESSARY TO CONCLUDE THAT CANARY'S PROPOSED CLASS IS FAIL-SAFE.

Related to the ascertainability point, Canary's proposed class definition is impermissibly fail-safe. Under the proposed class definition, each putative class member would need to prove the underlying elements of the TCPA claim—including that the caller was "Youngevity's agent" and that the call was made "using ATDS" or a prerecorded voice message—such that the member either wins on each particular legal element or he or she is not in the class. Fail-safe definitions like this are impermissible. *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011) (decertifying a class that only included those who are "entitled to relief" based on its fail-safe nature).

Plaintiff attempts to distinguish the cases cited by Youngevity on the grounds that they all relate to the issue of consent. (Resp. at 24.) However, these cases present exactly the same problem—that the class consist only of those people who can establish an element of the TCPA violation. Such classes are both failsafe. *Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536, 540 (E.D. Mich. 2015).

---

[23] *Buffin v. City & Cty. of San Francisco*, No. 15-CV-04959, 2018 WL 1070892, at *4 (N.D. Cal. Feb. 26, 2018), cited by Canary, is markedly different because there, each class member alleged liability based on the same bail policy used by the municipality.

1

2

DATED:  September 20, 2018

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FOLEY & LARDNER LLP**
Robert H. Griffith

*/s/ Robert H. Griffith*

Robert H. Griffith
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654
Telephone:  312.832.4500
Facsimile:    312.832.4700
rgriffith@foley.com
Counsel for Defendant
YOUNGEVITY INTERNATIONAL, INC.