United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BRYAN CANARY,<br>        Plaintiff,<br>v.<br>YOUNGEVITY INTERNATIONAL, INC.,<br>        Defendant. | Case No. 5:18-cv-03261-EJD<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; CONTINUING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. No. 20 |

## I.    INTRODUCTION

Plaintiff Bryan Canary ("Canary") initiated this putative class action suit seeking damages and injunctive relief pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 United States Code section 227. Defendant Youngevity International, Inc. ("Youngevity") moves (1) to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) because the allegations are insufficient to plead that the telephone call at issue was placed by Youngevity and (2) to strike the class allegations pursuant to Fed. R. Civ. P. 12 (f) because they are overbroad and not co-extensive with Canary's own claims. The Court finds it appropriate to take the motion under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons set forth below, Youngevity's motion to dismiss and to strike will be granted with leave to amend.

## II.    BACKGROUND[1]

Canary, a resident of Castroville, California, has a cell phone number that has been on the National Do Not Call ("DNC") Registry since approximately 2006. Complaint ¶¶ 12, 41 (Dkt.

---

[1] The Background is a summary of the allegations in the Complaint.

Case No.: 5:18-cv-03261-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND TO STRIKE CLASS ALLEGATIONS

1

No. 1). Youngevity is a "network marketing business" that is incorporated in Delaware and headquartered in Chula Vista, California. *Id*. ¶¶ 2, 13. David Allen Capital, Inc. ("DAC") is a "division" of Youngevity through which Youngevity markets small business loans. *Id*. ¶ 2.

On or about March 15, 2018, Canary received a telephone call from the number 1-800-712-0830 (hereinafter referred to as "the call" or "March 15 call"). *Id*. ¶ 42. Canary did not answer the call and the caller left a prerecorded voicemail message. *Id*. ¶ 43. "The call appeared to have been made using an automated telephone dialing system." *Id*. In the voicemail message, the caller referred to himself as "Renee" with DAC. *Id*. ¶ 44. "The purpose of the call was to advertise loans to small business owners in amounts of $10,000 to $500,000. *Id*. Canary alleges that the voice of "Renee" is "Wade Cordell, who has been affiliated with Youngevity since his herbal supplement company, Restart Your Life, was acquired by Youngevity in 2014." *Id*. ¶ 45. Wade Cordell ("Cordell") is either an employee of Youngevity or served as a "high-level sales agent telemarketer" for Youngevity and DAC. *Id*. ¶ 34. Cordell allegedly made the telephone call "acting on behalf of Youngevity." *Id*. ¶¶ 87-89.

The voicemail message asked Canary to call 1-800-712-0830 and to leave contact information. *Id*. ¶ 49. "Calling 1-800-712-0830 directs the caller to the website myvipfunding.com, which then directs the viewer to complete an application form for David Allen Capital funding." *Id*. Canary does not allege that he applied for any loan with DAC or Youngevity. Instead, Canary alleges that had he completed the application form and subsequent application forms sent to him, "he would have been directed to a DAC sales agent who would have attempted to sell him a small business loan or other service from Youngevity's portfolio of personal and small business services." *Id*. ¶ 51.

Canary asserts causes of action against Youngevity for (1) statutory violations of the TCPA for which Canary seeks statutory damages for himself and the putative class ($500 for each and every call that violated the TCPA), and (2) knowing and/or willful violations of the TCPA for which Canary seeks treble damages for himself and the putative class (up to $1,500 for each and

every call that violated the TCPA). *Id*. ¶¶ 128-137.

### III. STANDARDS

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Moreover, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." *Twombly*, 550 U.S. at 556-57.

When deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989). The court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). "[M]aterial which is properly submitted as part of the complaint may be considered." *Twombly*, 550 U.S. at 555. But "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Id*.

Rule 12(f), Fed. R. Civ. P., permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." When the court considers a motion to strike, it "must view the pleading in a light most favorable to the pleading party." *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000). A motion to strike should be denied if there is any doubt whether the allegations in the pleadings might be relevant to the action. *Id*.

Case No.: 5:18-cv-03261-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND TO STRIKE CLASS ALLEGATIONS
3

## IV. DISCUSSION

The TCPA makes it unlawful for any person in the United States to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). "The plain language of the statute assigns civil liability to the party who 'makes' a call." *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012), *aff'd*, 582 F. App'x 678 (9th Cir. 2014). "For a person to 'make' a call under the TCPA, the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call." *Abante Rooter & Plumbing v. Farmers Group, Inc.*, No. 17-3315 PJH, 2018 WL 288055, at * 4 (N.D. Cal. Jan. 4, 2018) (citing *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877-79 (9th Cir. 2014)).

Youngevity contends that Canary has sued the wrong party. Def.'s Motion 1 (Dkt. No. 20). Youngevity argues that the case arises out of a single voicemail made on behalf of DAC, not Youngevity, and that this call does not mention or refer to Youngevity, does not originate from a phone number associated with Youngevity, does not refer to a Youngevity website or a Youngevity representative, and does not promote a loan issued by Youngevity. Youngevity also contends that Canary's attempts to lump Youngevity and DAC together using principles of agency and ratification are propped up by nothing more than recitations of legal standards, "upon information and belief" and "either-or" allegations that lack any factual support, and formulaic recitations of the elements of each claim.

**A. Direct Liability**

    **1.    The Complaint Fails to Allege that Youngevity Directly Made The Call**

Canary alleges that he "understands and believes" the March 15 call and voicemail message were "made by an authorized sales agent acting on behalf of Youngevity's" DAC business loan servicing arm. Complaint ¶ 38. This understanding and belief are coupled with allegations that the voice of "Renee" on the call is Cordell (*id*. ¶ 45), who is "either an employee of Youngevity or

served as a high-level sales agent" for Youngevity and DAC (i*d*. ¶ 34) and that Cordell "made" the telephone call "acting on behalf of Youngevity." *Id*. ¶¶ 87-89.

These allegations are insufficient to support a plausible inference that Youngevity made the call. At most, Canary's allegations raise a possibility or suspicion that "Renee" was a pseudonym and that the speaker was actually Cordell. Even if the Complaint set forth sufficient facts from which to infer that the voice on the call was Cordell's voice (which it does not), the Complaint lacks sufficient facts to support a plausible inference that Cordell or Youngevity dialed Canary's telephone number.

Canary counters that publicly available information leads to the conclusion that Cordell "was responsible for the call." Pl.'s Resp. 4 (Dkt. No. 23). More specifically, Canary argues that it can be inferred that "Renee" is Cordell because Renee's message asks Canary to call 1-800-712-0830 and calling that number leads to the assignment of Cordell as the "client support specialist assigned to your account"; Cordell has many connections to Youngevity; and Cordell and DAC's founder, David Rutz ("Rutz"), created a "voice to text" script to "move loans marketed by Youngevity through DAC. *Id*. (citing Complaint ¶¶ 45-48, 50). Although the allegations above suggest that it is possible "Renee" is Cordell, they are insufficient to support a plausible inference that Cordell or Youngevity made the call. Canary's reliance on *Lemieux v. Lender Processing Ctr.*, No. 16-1850 BAS, 2017 WL 1166430, at * 5 (S.D. Cal. Mar. 29, 2017), is misplaced. In *Lemieux*, the plaintiff spoke to a person who said the call was from one named defendant and then transferred the call to a different representative who informed plaintiff that the call was from the second defendant. The *Lemieux* court held that plaintiff had pled sufficient facts to support a plausible inference that the second defendant was "responsible" for the telephone call that allegedly violated the TCPA. *Id*. The present case is distinguishable. Unlike *Lemieux*, Canary did not have any interaction with a representative during the March 15 call and the voicemail message that was left on Canary's phone only identified "Renee" and DAC; there was no mention

Case No.: 5:18-cv-03261-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND TO STRIKE CLASS ALLEGATIONS

5

of Youngevity.[2] Moreover, calling 1-800-712-0830 led to Cordell who is described as a "DAC client support specialist," not a Youngevity employee.

Canary next argues that direct liability for Youngevity exists because "Youngevity created and approved the call script used in the voicemail message [Canary] received." Pl.'s Resp. 6 (citing Complaint ¶ 32). This is a mischaracterization of the allegations in the Complaint. The Complaint does not allege that the voicemail message Canary received followed any script that Youngevity created and approved. Instead, the Complaint alleges that Cordell and Rutz created a "voice to text" script (Complaint ¶ 32); the March 15 message Canary received was not a text message.

Canary also argues that direct liability exists because Youngevity's Vice President "admitted that had [Canary] filled out the loan pre-qualification form, Youngevity would have then taken over" (*id*. ¶ 50) and that Youngevity "directly pays commissions on every loan funded or service/product sold" (Pl.'s Resp. 7). These allegation, however, suggest that Youngevity's alleged involvement is at least three steps removed from the March 15 call: a caller must then (1) call 1-800-712-0830, then (2) fill out and then (3) submit a pre-qualification form before Youngevity "takes over." These allegations do not support a plausible inference that Youngevity "directly ma[d]e the call." *Abante Rooter & Plumbing v. Farmers Group, Inc.*, 2018 WL 288055, at * 4; *see also Meeks v. Buffalo Wild Wings, Inc.,* No. 17-7129 YGR, 2018 WL 1524067, at *4 (N.D. Cal. March 28, 2018) (noting that direct liability does not extend to those who "might merely have some role in the causal chain that results in the making of a telephone call); *In re Pet. by Dish Network, LLC et al*, 28 F.C.C. Rcd. 6574, 6583, ¶ 26 (2013) (concluding that "a person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call, and generally does not include persons or entities, such as third-party retailers, that might

---

[2] The lack of any mention of Youngevity during this process also distinguishes this case from *Reichman v. Poshmark, Inc.*, 267 F. Supp. 3d 1278, 1281-1284 (S.D. Cal. 2017) (denying motion to dismiss complaint alleging that defendant Poshmark sent text message containing an invitation "to view and buy the wares now being sold through Poshmark and giv[ing] a link to the Poshmark closet of the person whose Contacts list was used").

Case No.: 5:18-cv-03261-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND TO STRIKE CLASS ALLEGATIONS

6

merely have some role, however minor, in the causal chain that results in the making of a telephone call").

### 2. The Complaint Lacks Sufficient Facts to Plead Direct Liability for DAC's Actions

The Complaint identifies Youngevity and DAC as separate corporate entities. Complaint ¶¶ 1-2.[3] Canary uses various terms and phrases in the Complaint to describe the relationship between DAC and Youngevity. Canary refers to DAC as a "Youngevity division" (*id*. ¶ 2), Youngevity's "arm" (*id*. ¶ 5), "the commercial loan service [Youngevity] uses to connect consumers with small business loans" (*id*. ¶ 13), one of Youngevity's "service arms" (*id*. ¶¶ 33, 78, 98), and a company "falling under the Youngevity umbrella" (*id*. ¶ 33).

Liberally construed, Canary's allegations may be sufficient to plead that DAC is a subsidiary or another affiliate of Youngevity. These allegations, however, are insufficient to hold Youngevity directly liable for the March 15 call because Canary does not adequately allege that DAC made the March 15 call, and as a general rule, a parent company is not liable for its subsidiary's actions. *In re Portfolio Recovery Assocs., LLC, Tel. Consumer Prot. Act Litig.*, No. 11-MD-2295 JAH, 2014 WL 223557, at *2 (S.D. Cal. Jan. 8, 2014) (announcing the same rule in a TCPA case).

### 3. The Complaint Lacks Sufficient Facts to Plead that The Call Was Made by a Youngevity Employee

Even if the Complaint adequately alleges that Cordell made the call (which it does not for reasons already discussed above), the Complaint lacks sufficient facts to plead that Cordell is a Youngevity employee.[4] Canary rests his claim on the allegation that Cordell is "either an

---

[3] Youngevity's request to take judicial notice of DAC's Articles of Incorporation with the State of Michigan and DAC's current standing with the State of Michigan is granted. A court may take judicial notice of public records. *See MGIC Indem. Corp. v. Weisman*, 803 F. 2d 500, 504 (9th Cir. 1986).
[4] Youngevity represents that "Cordell is not an employee of Youngevity and had nothing to do with pre-recording or placing the call at issue." Def.'s Reply 1, n.1. Although Youngevity's representation is not relevant to the merits of Youngevity's motion to dismiss, it may be relevant

Case No.: 5:18-cv-03261-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND TO STRIKE CLASS ALLEGATIONS
7

employee of Youngevity or served as a high-level sales agent (effectively a telemarketer) for Youngevity and DAC." *Id.* ¶ 34. Although a plaintiff may plead in the alternative, a plaintiff must allege facts that "nudge" his claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 556-57. Canary has not done so. Canary alleges that Cordell is "[t]he DAC client support specialist" (Complaint ¶ 50); that he participated in a training video to market loans "by Youngevity through DAC" and represented that he is "part of Youngevity" (*id.* ¶¶ 32, 47); that he "help[ed] to create the buzz" around "Youngevity services" (*id.* ¶ 46); that he sold his own company to Youngevity in 2014 (*id.* ¶ 45); that he created a "voice to text" script to "move loans marketed by Youngevity through DAC (*id.* ¶ 48); and that his wife is the "Vice Chairwoman" of Youngevity (*id.*). It is "conceivable" based on these allegations that Cordell is a Youngevity employee, which would create a potential basis for direct liability. But it is just as "conceivable" based upon these same allegations that Cordell is a DAC distributor for which there would be no direct liability for Youngevity.[5] Therefore, the allegations do not nudge Canary's direct liability theory across the line from conceivable to plausible. *Cf. Freidman v. Massage Envy Franchising, LCC*, No. 12-2962 MJL, 2013 WL 3026641, at *3 (S.D. Cal. June 13, 2013) (dismissing TCPA claim where plaintiffs alleged that each defendant was "an agent and/or employee" of the defendant).

**B.  Vicarious Liability for Violation of the TCPA**

In the Ninth Circuit, vicarious liability can provide a basis for liability for violation of the TCPA. *Thomas v. Taco Bell Corp.*, 582 F. App'x at 679. Here, Canary advances three theories of vicarious liability: agency, apparent authority, and ratification. Youngevity contends that Canary does not allege sufficient facts—as opposed to conclusions—to satisfy any of these theories of vicarious liability.

---

to Canary's obligations under Federal Rule of Civil Procedure 11.
[5] Whether Canary has adequately alleged vicarious liability for DAC's action is addressed in Section B to this Order.

**1. Agency**

"Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017) (as amended) (quoting Restatement (Third) of Agency § 1.01 (Am. Law Inst. 2006)). For an agency relationship to exist, the agent must have authority to act on behalf of the principal and the principal must have the right to control the agent's actions. *Id*. "Agency means more than mere passive permission; it involves request, instruction, or command." *Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *6 (quoting *Klee v. United States*, 53 F.2d 58, 61 (9th Cir. 1931)); *see also Thomas*, 879 F. Supp. 2d at 1085 (holding that defendant could not be held vicariously liable for alleged TCPA violations because the defendant did not exercise control over the "manner and means" by which a text message campaign was designed and executed); *Linlor v. Five9, Inc.*, No. 17-218 MMA, 2017 WL 5885671, at *3 (S.D. Cal. Nov. 29, 2017). In order to establish agency liability for a TCPA violation, a plaintiff "must do more than establish an agency relationship." *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018). A plaintiff "must also establish actual authority to place the unlawful calls." *Id*.

    **a.    Allegations re Actual Authorization to Make the March 15 Call**

"Actual authority is limited to actions 'specifically mentioned to be done in a written or oral communication' or 'consistent with' a principal's 'general statement of what the agent is supposed to do.'" *Id*.; *see also Knapp v. Sage Payment Solutions, Inc.*, No. 17-391 MMC, 2018 WL 659016, at *2 (N.D. Cal. Feb. 1, 2018). In Canary's Response to this motion, Canary argues that "Youngevity authorized Wade Cordell to make the call he did, using autodialing technology and leaving the prerecorded voicemail message, with a call script created, in part, by Youngevity's own VP." Pl.'s Resp. 8-9. Canary's argument is based upon allegations in the Complaint that he received a call from Cordell that was made on behalf of Youngevity; that Youngevity

Case No.: 5:18-cv-03261-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND TO STRIKE CLASS ALLEGATIONS

9

"encourages" sales agents to employ phone calls; that, upon information and belief, Youngevity reviews and vets all advertising and marketing materials distributed by its agents; that Youngevity "allows" employees and agents like Cordell to market loans through DAC by making autodialed and prerecorded calls to non-customers; that Cordell "had the actual authority of Youngevity to make the complained-of calls"; and that Cordell "was an authorized agent of Youngevity when he made the call." Complaint ¶¶ 23, 29-32, 45, 74, 81, 92).

These allegations are too general and conclusory to plead that Youngevity authorized the March 15 call in a written or oral communication. For example, Canary does not allege facts to support the conclusion that Youngevity "allows" autodialed and prerecorded calls. The court need not accept such a conclusory allegation (*Twombly*, 550 U.S. at 555), especially where Youngevity's Policies expressly prohibit telemarketing methods that would violate state or federal law.[6]

### b. Allegations re Control Over Manner and Means of Telemarketing

"In determining whether vicarious liability may be imposed, the 'extent of control exercised by the [principal]' is the 'essential ingredient.'" *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d at 450 (quoting *United States v. Bonds*, 608 F.3d 495, 505 (9th Cir. 2010)). To establish vicarious liability for a TCPA violation, a plaintiff must allege facts to show that the defendant controlled the "manner and means" of the call. *See Thomas*, 879 F. Supp. 2d at 1085.

Here, Canary alleges that Youngevity controls by, for example, requiring pre-approval of any advertising materials. Complaint ¶¶ 70-73. Lacking, however, are sufficient factual allegations to plead that Youngevity exercised control over the specific contents of the March 15 call advertising DAC. Even if Canary had alleged such facts, control over the content of an advertising call, without more, is insufficient to plead vicarious liability. *See Jones v. Royal Administration Services, Inc.*, 887 F.3d at 451 (rejecting vicarious liability theory even though the

---

[6] The court takes judicial notice of Youngevity's Policies because Canary extensively relies on and quotes from the Policies in the Complaint. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Case No.: 5:18-cv-03261-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND TO STRIKE CLASS ALLEGATIONS

10

alleged principal required the scripts and advertising materials to be pre-approved in accordance with company guidelines).[7]

Youngevity allegedly "takes over" only after a person receives a call, calls 1-800-712-0830, completes a DAC loan application, and finally submits that application. Complaint ¶ 50. This alleged control after the call is insufficient to plead agency liability. *See Jones* v. *Royal Administration Services, Inc.*, 887 F.3d at 451 (affirming summary judgment in favor of defendant where defendant exercised some amount of control over advertising materials but "did not have any control of a telemarketer's call until the telemarketer decided to pitch" defendant's vehicle service contracts to the consumer).

Canary alleges on information and belief that Youngevity "provided its agents permission to perform the telemarketing that is the subject of this lawsuit" or "willfully looked the other way." Complaint ¶ 82. The court need not accept such a vague allegation that is also unsupported by facts. Moreover, granting permission to perform telemarketing does not mean that Youngevity exercised control over the entity that made the March 15 call. *See Thomas*, 879 F. Supp. 2d at 1085-86 (finding that defendant who knew of text message marketing campaign, approved it via its minority vote, and funded the campaign did not exercise control over the manner and means by which the campaign was designed and executed); *see also Naiman v. TranzVia LLC*, No. 17-4813

---

[7] Canary cites to two out-of-circuit cases for the proposition that control over sales script and other advertising materials is enough to establish agency liability for a TCPA violation. *See Gould v. Farmers Ins. Exch*, 288 F. Supp. 3d 963, 969 (E.D. Mo. 2018); *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 832 (N. D. Ill. 2016). The court is not bound to follow these out-of-circuit cases. In any event, in each case, the plaintiff alleged more than just control over sales script and advertising materials. In *Gould*, the court held that plaintiff had sufficiently alleged that defendant Farmers was directly and vicariously liable for violating the TCPA because Farmers used software to send the allegedly unlawful text message *en masse*; the texts stated they were from Farmers or agents "with Farmers"; and Farmers directed the content of its agents' advertising, required approval of advertising, and approved the text messages sent to plaintiff. *Gould*, 288 F. Supp. 3d at 969-970. In *Aranda*, the plaintiffs had adduced evidence that the defendant had expressly or impliedly granted actual authority to a separate company, ESG, to make unlawful calls on behalf of defendant. *Aranda*, 179 F. Supp. 3d at 832. In particular, the *Aranda* court focused on evidence that the agreement between the defendant and ESG required ESG to provide defendant with "an exact telephone script with an exact audio file of each survey" and that defendant's attorneys proposed edits to the survey script being used. *Id*. at 832. Canary's Complaint does not contain comparable allegations.

Case No.: 5:18-cv-03261-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND TO STRIKE CLASS ALLEGATIONS

11

PJH, 2017 WL 5992123, at *10-11 (N.D. Cal. Dec. 4, 2017) (granting motion to dismiss TCPA claim because defendant's agreement with telemarketer on the volume of calling and the number of leads per day did not amount to control over the telemarketer).

### c. Allegations re Distributor DAC

Youngevity's Policies make clear that its distributors are "independent contractors" and that Youngevity "does not dictate the selling methods, specific hours, or effort levels" of its distributors. Dkt. No. 20-2, Ex. 2 ¶¶ D1, D3. Although Youngevity's characterization of its relationship with its distributors is not necessarily controlling, the Complaint does not allege facts to the contrary. Canary does not allege that Youngevity controlled the selling methods, specific hours or effort levels of Cordell, DAC, or any other the person or entity who may have made the March 15 call. Canary does not allege, for example, (a) that Youngevity supplied any of the tools or instrumentalities of work such as phone lines, computers, internet or office space to Cordell, DAC or any other distributor, (b) that the March 15 call came from a phone number associated with Youngevity; or (c) that the website referenced in the voicemail made any reference to Youngevity.

Instead, Canary argues that the "exclusive, permanent, and interdependent nature of the relationship between Youngevity and Cordell/DAC support a finding of agency." Pl.'s Resp. 11. Canary emphasizes that DAC is not an independent business with a distinct operation separate and apart from Youngevity and that Youngevity both benefits from and pays commissions to DAC for loan sales. *Id*. 12. These allegations, without more, are insufficient to support a plausible inference that DAC is Youngevity's agent. In *Dobkin v. Enter. Fin. Grp., Inc.*, No. 14-1989 WHW, 2014 WL 4354070, at *4 (D. N.J. Sept. 3, 2014), the court held that plaintiff had pled a plausible agency theory in part because of allegations that the defendant's telemarketing agent and defendant shared revenues. Significantly, the *Dobkin* court also relied on allegations that both the telemarketing agent and defendant had websites displaying the same product information, and that the telemarking agent offered to sell plaintiff the very product appearing on both websites.

Case No.: 5:18-cv-03261-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND TO STRIKE CLASS ALLEGATIONS
12

Canary's Complaint does not contain comparable allegations. Canary does not allege that DAC's products appear on any Youngevity website or any other Youngevity marketing material seen by consumers.

### d. Allegations re Business Practices

The Complaint includes several allegations regarding Youngevity's business practices. Canary alleges, among other things, that Youngevity holds weekly training, encourages distributors to employ phone calls and text messages as means of telemarketing, uses training videos and calls hosted by Cordell and Rutz to train sales agents, encourages cold calling, and awards bonuses to agents. Complaint ¶¶ 29, 32-33, 47-48, 62-63, 67. Canary also alleges that Cordell and Rutz "created a 'voice to text' script to 'move' loans marketed by Youngevity through DAC." *Id.* ¶ 48.

None of these allegations are sufficient to support a plausible inference that Youngevity controlled the specific person or entity that allegedly made the March 15 call to Canary. Nor are the allegations sufficient to support a plausible inference that Youngevity generally exercises control over the manner and means in which its distributors conduct marketing calls. The alleged business practices are insufficient to plausibly plead Youngevity' vicarious liability. *See Meyer v. Capital All. Grp.*, No. 15-2405 WVG, 2017 WL 5138316, at *11 (S.D. Cal. Nov. 6, 2017) (holding that evidence of defendant hiring third-party vendors to send faxes and make telemarketing calls was insufficient to establish the requisite control over the methods and means vendors employed).

### e. Allegations re Whether Cordell is Youngevity's Agent

As discussed previously, Canary has not plausibly alleged that Cordell made the call to Canary's number on March 15. But even if Canary had adequately alleged that Cordell made the March 15 (which he has not), Canary has not plausibly alleged that Cordell is a Youngevity agent. Canary's agency theory rests on the very same allegations Canary relies upon to try to plead that Cordell is Youngevity employee, *i.e.* that Cordell is a high-level sales agent, a telemarketer and an

affiliate of Youngevity; Cordell's wife is a "Vice Chairwoman" of Youngevity; Cordell created a "voice to text" script; Cordell worked as the "DAC client support specialist"; and Cordell helped create "buzz around Youngevity services." Complaint ¶¶ 32, 34, 45, 46, 48, 50. None of these allegations are sufficient to support a plausible inference that Youngevity controlled the method and means of Cordell's alleged March 15 call to Canary or the method and means of Cordell's promotional activities in general. As Youngevity aptly points out, there are no allegations to suggest that "Youngevity set particular requirements for Cordell to follow as to the number of calls, hours of operation, type of equipment to use, the content of his conversations or prerecorded messages, or provided or dictated the tools or instrumentalities for Cordell's alleged outreach." Def.'s Motion 17.

In summary, Canary fails to plausibly allege that Cordell acted as Youngevity's agent when he allegedly made the March 15 call.

### 2. Apparent Authority

Apparent authority can only "be established by proof of something said or done by the [alleged principal], on which [the plaintiff] reasonably relied." *Thomas*, 582 F. App'x at 679-80 (quoting *NLRB v. Dist. Council of Iron Workers of Cal. & Vicinity,* 124 F.3d 1094, 1099 (9th Cir. 1997) and citing Restatement (Second) of Agency § 265 cmt. *a* (1958)). "Apparent authority exists only as to those to whom the principal has manifested that an agent is authorized." Restatement (Second) of Agency § 265 cmt. *a* (1958). "There is, therefore, tort liability only if such a manifestation and its execution by the apparent agent results in harm." *Id*. Here, Canary does not allege that he reasonably relied upon something said or done by Youngevity to his detriment, and therefore the apparent authority theory fails.

### 3. Ratification

Ratification is "the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Kristensen v. Credit Payment Services Inc.,* 879 F.3d 1010, 1014 (9th Cir. 2018) (quoting The Restatement (Third) of Agency § 4.01(1)).

Case No.: 5:18-cv-03261-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND TO STRIKE CLASS ALLEGATIONS

14

"A person may ratify an act if the actor acted or purported to act as an agent on the person's behalf." The Restatement (Third) of Agency § 4.03. "Therefore, '[w]hen an actor is not an agent and does not purport to be one,' the doctrine of ratification does not apply." *Id.* (quoting The Restatement (Third) of Agency § 4.03 cmt. b.). As explained above, Canary's Complaint lacks sufficient facts to plausibly allege that Cordell or DAC acted or purported to act as an agent of Youngevity for the March 15 call. This deficiency is fatal to Canary's ratification theory.

### C. Second Count: Knowing Or Willful Violation of TCPA

In the Second Count, Canary alleges that the March 15 call "was one of numerous and multiple knowing and/or willful violations of the TCPA by Defendant." Complaint ¶ 134. The Second Count is subject to dismissal because Canary has failed to adequately plead a violation of the TCPA in the First Count and because it consists of nothing more than bare-bones legal conclusions unsupported by facts. *Twombly*, 550 U.S. at 555.

### D. Proposed Class Allegations

Canary proposes to represent a class defined as: "All persons within the United States who received a non-emergency telephone call from Youngevity, a Youngevity sales agent, or a Youngevity company/division to a cellular telephone through the use of an autodialer and/or voice message that had been recorded ahead of time, which was made for the purpose of soliciting the sale of products or services." Complaint ¶ 107. Youngevity moves to strike the allegations as overbroad. Because Canary has not sufficiently alleged a violation of the TCPA, the motion to strike will be granted.

//

//

//

## V. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss and to strike is GRANTED with leave to amend. Canary may file and serve an amended complaint no later than April 8, 2019. The case management conference scheduled for April 11, 2019 is continued to June 13, 2019. The parties shall file a case management statement no later than June 3, 2019.

**IT IS SO ORDERED.**

Dated: March 20, 2019

_____
EDWARD J. DAVILA
United States District Judge